**William R. MARABLE, Appellant,**

v.

**The STATE of Texas.**

**No. 0765–99.**

Court of Criminal Appeals of Texas, En banc.

Sept. 18, 2002.

Brian Goza, Fort Worth, for Appellant.

C. James Gibson, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which PRICE, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

 We granted the following ground for review: "Whether the appellant had sufficient notice of the theory of culpability by which the State would seek conviction for delivery of a controlled substance?" As the Court of Appeals remarked, the heart of appellant's complaint is "that he did not receive adequate notice to prepare his defense because the State did not allege in the indictment that it would prove actual delivery by the law of parties."[1] But it is well-settled that the law of parties need not be pled in the indictment.[2] We

---

1. *Marable v. State,* 990 S.W.2d 421, 424 (Tex. App.-Texarkana 1999).

2. *Malik v. State,* 953 S.W.2d 234, 239 (Tex. Crim.App.1997); *Jackson v. State,* 898 S.W.2d

have so held in a drug delivery case with circumstances materially identical to the case at bar.[3]

The judgment of the Court of Appeals is affirmed.

COCHRAN, J., flled a concurring opinion.

WOMACK, J., filed a dissenting opinion in which MEYERS, and JOHNSON, JJ., joined.

COCHRAN, J., filed a concurring opinion.

We granted review to determine whether appellant had sufficient notice of the theory of culpability by which the State

would seek his conviction for delivery of a controlled substance.[1] I join the Court's opinion and add the following comments.

### I.

On the afternoon of December 4, 1996, undercover Fort Worth Police Department Officer Dave Torsiello drove down East Berry Street. Officer Torsiello and his backup team had been assigned to the area in response to complaints that individuals were openly selling narcotics.

Officer Torsiello testified that a woman, Valerie Whorley, flagged him down and asked what he was doing. Officer Torsiello answered that he was looking for a place

896, 898 (Tex.Crim.App.1995); *Fisher v. State,* 887 S.W.2d 49, 57 (Tex.Crim.App. 1994); *Swope v. State,* 805 S.W.2d 442 (Tex. Crim.App.1991); *Montoya v. State,* 810 S.W.2d 160, 165 (Tex.Crim.App.1989), *cert. denied,* 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). *Crank v. State,* 761 S.W.2d 328, 352 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978).

3. *Tate v. State,* 811 S.W.2d 607, 607, 607 n. 3 (Tex.Crim.App.1991)(sale of methamphetamine between the defendant, an undercover police officer, and the officer's informant; noting that the Court of Appeals correctly held, "it is well settled that if the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment").

1. Although appellant's petition for discretionary review presented five questions for review, this Court granted review only on the question:

Whether the appellant had sufficient notice of the theory of culpability by which the State would seek conviction for delivery of a controlled substance?

However, both the State and appellant briefed this Court on all five questions. For the sake of clarity, I, therefore, list those four additional questions here:

Whether the Sixth Court of Appeals erred in finding that the evidence was factually sufficient to support appellant's conviction as a party for actual delivery of a controlled substance?

Whether the Sixth Court of Appeals erred in finding that the evidence was legally sufficient to support appellant's conviction as a party for actual delivery of a controlled substance?

Whether the Court of Criminal Appeals should revisit the precedent set by *Miller v. State,* 537 S.W.2d 725, [sic] (Tex.Crim.App. 1976), for sufficiency of the evidence in delivery of controlled substance cases in which the State relies on the law of parties to prove that the defendant by actual delivery transferred a controlled substance through a third person to the ultimate transferee?

Whether the Sixth Court of Appeals erred by applying the incorrect standard of review for reviewing the sufficiency of the evidence as set forth in *Miller v. State,* 537 S.W.2d 725 (Tex.Crim.App.1976)?

To dispose of the sole issue before this Court and to the extent that the analysis overlaps, I would examine aspects of the grounds for which we did not grant review, because the parties themselves have made those additional grounds an essential part of their discussion of the primary question.

"to score a couple of 'dimes.'"[2] Ms. Whorley agreed to take Officer Torsiello to such a location if he would buy her some, too.

Ms. Whorley then instructed Officer Torsiello to drive to the intersection of East Bessie and Virginia Streets. When they arrived, Ms. Whorley asked Officer Torsiello to buy her ten dollars' worth of crack cocaine. Officer Torsiello agreed and told Ms. Whorley that he wanted twenty dollars' worth for himself. Accordingly, he gave her thirty dollars in cash.

Ms. Whorley left the car and approached appellant. As she began speaking to appellant, Officer Torsiello left and drove around the block a couple of times. When he returned, Ms. Whorley reported that she had given appellant the thirty dollars but appellant had not given her anything in return. She promised that if Officer Torsiello would give her another ten dollars, she would be able to get the crack cocaine for him. Officer Torsiello gave her another ten dollars and this time he waited in the car, which was about ten-to-fifteen feet away from appellant.

Officer Torsiello testified that he observed the entire transaction: Ms. Whorley handed the additional ten dollars to appellant, and then appellant placed a small white rock in Ms. Whorley's left hand. Ms. Whorley came back to Officer Torsiello's car and gave him the rock, which later tested positive for cocaine. Ms. Whorley then walked away from Officer Torsiello's car. Appellant walked to a nearby liquor store, where Officer Torsiello's backup team subsequently arrested him.

A Tarrant County Grand Jury indicted appellant on February 6, 1997 for delivery of a controlled substance. The indictment specifically alleged that appellant:

... on or about the 4th day of December 1996, did then and there intentionally or knowingly deliver to [Officer] D.A. Torsiello a controlled substance, namely cocaine of less than one gram, including any adulterants or dilutants, by actually transferring said controlled substance.

Appellant contends, inter alia, that the Sixth Court of Appeals erred when it found that the indictment provided appellant with sufficient notice of the theory of culpability that the State planned to pursue against him. More specifically, appellant complains that the evidence presented at trial supported only a finding of delivery by constructive transfer from appellant to Officer Torsiello, a theory not alleged in the indictment. Furthermore, appellant contends, because the indictment failed to mention Ms. Whorley's role in the transaction, the indictment did not notify appellant that the State would attempt to convict him as a party to Ms. Whorley's actual transfer of cocaine to Officer Torsiello. As the Court of Appeals noted, the heart of appellant's complaint is "that he did not receive adequate notice to prepare his defense because the State did not allege in the indictment that it would prove actual delivery by the law of parties." *Marable v. State*, 990 S.W.2d at 424.

Appellant also asserts that, even if the indictment sufficiently notified him of the State's theory of culpability, the evidence presented at trial was insufficient to show that he was a party[3] to the delivery of a

---

2. A "dime" is street slang for ten dollars' worth of crack cocaine.

3. An individual is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of anoth-

er for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or

controlled substance to Officer Torsiello. Appellant urges this Court to overrule our earlier holding in *Miller v. State*, 537 S.W.2d 725 (Tex.Crim.App.1976). Appellant notes that the Sixth Court of Appeals criticized this Court's analysis in *Miller*, but declared that *Miller's* factual similarity to appellant's case and the doctrine of *stare decisis* compelled it to follow *Miller's* holding, and thereby to overrule appellant's claim.

## II.

Before considering the merits of appellant's argument, I would first distinguish two statutory means of "delivering" a controlled substance. Under Texas Health and Safety Code section 481.002(8), " '[d]eliver' means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." [4] Thus, one may accomplish a delivery by either an actual transfer or a constructive transfer.

Because the Texas Controlled Substances Act does not define the terms "actual transfer" and "constructive transfer," Texas courts have construed the terms according to their plain and common meanings.[5] This Court's decisions interpreting the meaning of these terms have continued to flesh out our earlier holdings on the subject, as new factual scenarios have come before us, and as we have recognized that the same set of facts, if properly pleaded, may support both theories of transfer.[6]

We considered this subject in *Heberling v. State*, 834 S.W.2d 350 (Tex.Crim.App. 1992). In that case, we discussed the principles underpinning our conclusions in earlier delivery of controlled substances cases to clarify the definition of "actual transfer":

> ... [W]e now hold that an actual transfer or delivery, as commonly understood, contemplates the manual transfer of property from the transferor to the transferee or to the transferee's agents or to someone identified in law with the transferee.[7]

---

attempts to aid the other person to commit the offense. TEX PENAL CODE Ann. § 7.02(a)(2).

**4.** TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp.1994). The statute continues, "The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." *Id.* This third type of delivery is not at issue in the present case.

**5.** *See, e.g., Nevarez v. State*, 767 S.W.2d 766, 768 (Tex.Crim.App.1989); *Conaway v. State*, 738 S.W.2d 692, 695 (Tex.Crim.App.1987) (plurality op.). Black's Law Dictionary states that to "transfer" is to "convey or remove from one place or one person to another; to pass or hand over from one to another, esp[ecially] to change over the possession or control of." BLACK'S LAW DICTIONARY 1216 (7th ed.2000). A "constructive transfer," however, is "[a] delivery of an item-esp[ecially] a controlled substance-by someone other than the owner but at the owner's direction." *Id.*

**6.** A significant number of cases on this subject arose due to the State's failure to plead all possible theories of "delivery" provided for in § 481.002(8). *See, e. g., Heberling v. State*, 834 S.W.2d 350, 352–53 (Tex.Crim.App. 1992); *Thomas v. State*, 832 S.W.2d 47, 49–50 (Tex.Crim.App.1992); *Nevarez*, 767 S.W.2d at 766; *Daniels v. State*, 754 S.W.2d 214, 219 (Tex.Crim.App.1988) (en banc); *Conaway v. State*, 738 ·S.W.2d 692, 693–94; *Davila v. State*, 664 S.W.2d 722, 723 (Tex.Crim.App. 1984); *Queen v. State*, 662 S.W.2d 338, 340 (Tex.Crim.App.1983); *Sheffield v. State*, 623 S.W.2d 403, 404–05 (Tex.Crim.App.1981); *Rasmussen v. State*, 608 S.W.2d 205, 207 (Tex.Crim.App.1980); *Ferguson v. State*, 622 S.W.2d 846, 851–52 (Tex.Crim.App.1980); *Gonzalez v. State*, 588 S.W.2d 574, 576 (Tex. Crim.App.1979).

**7.** *Heberling*, 834 S.W.2d at 354. In *Heberling*, we clarified the definition of actual transfer to address the role of a transferee's agent. *Id.*

Until our decision in *Heberling*, some confusion existed regarding the role of a buyer-transferee's agent in cases alleging actual transfer from a defendant to an undercover police officer. The problem arose when the facts demonstrated that contraband actually passed from a defendant to an intermediary and then from that intermediary to an undercover police officer, but the jury charge did *not* include an instruction on the law of parties or the law of agency.[8] This Court's decision in *Heberling* made it clear that, if the evidence is such that a reasonable jury could conclude that an intermediary was an undercover officer's agent or representative, then proof beyond a reasonable doubt of an actual transfer from a defendant to that agent is legally sufficient to convict that defendant of an actual transfer to the undercover officer, whether or not the trial court instructed the jury on agency.[9]

An intermediary's relationship to a defendant-seller and an undercover officer-buyer is significant because it affects legal sufficiency of evidence and jury charge error analyses. If the State proceeds under the theory that an intermediary was an *undercover officer-buyer's* agent or representative, then a defendant could be convicted of an actual delivery under the rule articulated in *Heberling*.[10] However, if the theory is that an intermediary was a *defendant's* agent (*i.e.*, a "steerer"[11]), then a defendant can be convicted as a party to the actual delivery, assuming that the jury is so instructed.[12]

A constructive transfer is the transfer of a controlled substance either belonging to a defendant or under his direct or indirect control, by some other person or manner at the instance or direction of a defendant. *Davila v. State*, 664 S.W.2d 722, 724 (Tex. Crim.App.1984); *Rasmussen v. State*, 608 S.W.2d 205, 210 (Tex.Crim.App.1980). A conviction for delivery of a controlled substance by constructive transfer requires some showing that a defendant-transferor was "at least aware of the existence of an ultimate transferee before he may be said to have delivered or made a delivery of a controlled substance to another through a third party." *Gonzalez v. State*, 588 S.W.2d 574, 577 (Tex.Crim.App.1979). In addition, in either a constructive or an actual transfer situation, the evidence must show that a defendant-transferor voluntarily relinquished control or possession to a transferee. *Thomas v. State*, 832 S.W.2d 47, 51 (Tex.Crim.App.1992). Most actual deliveries involving an intermediary also qualify as constructive deliveries.

8. *Heberling*, 834 S.W.2d at 353–54.

9. *Id.* at 354.

10. *Id.*

11. A "steerer" is one who solicits business for a narcotics dealer. *See United States v. Watson*, 988 F.2d 544, 551 (5th Cir.1993); *United States v. Sostre*, 967 F.2d 728, 733 (1st Cir. 1992); *United States v. Copeland*, 902 F.2d 1046, 1049 (2nd Cir.1990) (steerer is "someone who directs buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation and we have noted the importance of steerers to certain narcotics distribution operations. Without 'steerers,' buyers would either find it difficult to locate sellers or sellers would have to risk exposure to public view.") (internal quotations and citations omitted).

12. Tex. Penal Code Ann. §§ 7.01(a) and 7.02(a)(2); *see Crank*, 761 S.W.2d 328, 351–52 (Tex.Crim.App.1988). Contrary to appellant's assertion, an indictment is not defective if it does not mention the law of parties. *See Crank*, 761 S.W.2d at 351–52. *See also Daniels v. State*, 754 S.W.2d 214, 217–18 (Tex. Crim.App.1988) (discussing sufficiency of notice when indictment tracks language of statute creating and defining the offense charged).

With these distinctions in mind, I would turn to the merits of appellant's claim.

### III.

Appellant contends that, because the indictment failed to allege that appellant actually transferred the controlled substance to Officer Torsiello through Valerie Whorley, the indictment did not sufficiently notify him of the State's theory of culpability. Appellant argues that the trial court erred by instructing the jury on the law of parties when the indictment did not allege facts supporting such an instruction. As the Sixth Court of Appeals noted, a party to an offense may be charged with the offense without alleging the facts that make him a party to the offense and criminally responsible for the conduct of another.[13] Moreover, if the evidence supports a charge on the law of parties, then the trial court may charge on the law of parties even though there is no such allegation in the indictment.[14]

These propositions are well-established in Texas law and they are equally well-established propositions under federal law.[15] Because the indictment need not include notice that the State will attempt to prove its case under the law of parties, the Court properly overrules this aspect of his ground for review.

Lastly, appellant contends that the State failed to prove an actual transfer. Appellant asserts that "the type of delivery which was shown at trial was without a doubt constructive delivery." He continues: "The Appellant allegedly delivered a controlled substance to a third party who then delivered the controlled substance to D.A. Torsiello, the recipient alleged in the indictment. These facts constitute a classic constructive delivery." Whether these facts do or do not constitute a constructive delivery is irrelevant. As noted previously, the facts of a given case may support a conviction for delivery of a controlled substance by actual transfer, constructive transfer, or both. The fact that the State alleges only one means of delivery in an indictment and then at trial presents evidence sufficient to prove more than one theory of culpability is irrelevant. What matters is that the State presents evidence such that a reasonable jury could convict a defendant under the theory alleged in the indictment and the instructions given by the trial court.

The evidence that the State presented at trial in the present case was sufficient to prove two distinct theories of an actual transfer from appellant to Officer Torsiello.[16] On one hand, a reasonable jury could

---

**13.** *Crank v. State,* 761 S.W.2d 328, 351 (Tex. Crim.App.1988). *See* TEX. PENAL CODE ANN. § 7.02; *see also Rico v. State,* 707 S.W.2d 549, 552 (Tex.Crim.App.1986); *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978).

**14.** *Crank,* 761 S.W.2d at 352. *See Rico v. State,* 707 S.W.2d at 552; *Pitts v. State,* 569 S.W.2d at 900.

**15.** *See, e.g., United States v. Neal,* 951 F.2d 630, 633 (5th Cir.1992) ("[a]iding and abetting is not a separate offense, but is an alternative charge in every indictment, whether explicit or implicit"); *United States v. Renner,* 238 F.3d 810, 814 (7th Cir.2001) ("Every indictment implicitly includes an aiding and

abetting charge; it is unnecessary for an indictment specifically to mention 18 U.S.C. § 2 (the federal party principal statute))"; *United States v. Bradstreet,* 135 F.3d 46, 53–54 (1st Cir.1998) ("aiding and abetting is an alternative charge in every count, whether explicit or implicit"); *United States v. Clark,* 980 F.2d 1143, 1146 (8th Cir.1992) ("[i]t is well established that a defendant may be convicted of aiding and abetting even though he was not charged in that capacity. . . . Aiding and abetting is an alternative charge in every count, whether implicit or explicit.").

**16.** It was, of course, also sufficient to prove a constructive delivery, but the State did not plead that manner of transfer.

have found that Valerie Whorley was Officer Torsiello's agent or representative or was identified in law with him. The court of appeals put it succinctly:

> Torsiello suggested to her that he wanted to purchase drugs.... [A]fter Torsiello's request, Whorley took him to an intersection where drugs were sold.... Officer Torsiello paid her for making the drug purchase.... The evidence does show that Whorley made the purchase from Marable.

*Marable v. State,* 990 S.W.2d at 426–27. Based on this evidence, a reasonable jury could have determined beyond a reasonable doubt both that Ms. Whorley acted as Officer Torsiello's agent and that appellant delivered a controlled substance to her by actual transfer. The evidence was also sufficient for a reasonable jury to find beyond a reasonable doubt that Ms. Whorley then delivered that controlled substance to Officer Torsiello by actual transfer. Under *Heberling,* this evidence was legally sufficient to convict appellant of an actual transfer to Officer Torsiello through Officer Torsiello's agent, Ms. Whorley.[17]

On the other hand, a reasonable jury could also have found from the evidence presented at trial that appellant was guilty as a party to the actual transfer of a controlled substance to Officer Torsiello. In this regard, I disagree with the court of appeals' characterization of the evidence and with its application of *Miller v. State,* 537 S.W.2d 725 (Tex.Crim.App.1976) to that evidence.

The court of appeals listed its reasons for concluding that the evidence did not show that Ms. Whorley and appellant were working together:

> The evidence does not show that Whorley was aware of any particular seller of drugs.... There was no evidence that Marable knew Whorley or that Whorley was in any way working on behalf of Marable. There was no evidence that Marable was aware of Officer Torsiello, although Marable was within Officer Torsiello's view, or that Marable was aware that Officer Torsiello was the real purchaser of drugs. Officer Torsiello's mere presence in a car near the scene of the purchase does not show that Marable knew Officer Torsiello was the purchaser of the drugs.

I disagree. As the court of appeals correctly noted, to convict a party to an offense, the evidence must directly or circumstantially show that the individual acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid another person in the commission of the offense.[18] The jury may consider events occurring before, during, and after the offense, as well as actions which suggest an understanding and common design to engage in the act.[19] The record in this case contains sufficient evidence from which a reasonable jury could infer a party relationship between appellant and Ms. Whorley.

For example, there is Officer Torsiello's direct testimony that Ms. Whorley initiated the encounter that ultimately led to appellant's arrest. He testified that she waved him (a complete stranger) over to her and then asked him what he was do-

---

17. *Heberling,* 834 S.W.2d 350, 354. Although the evidence is legally sufficient, the jury was not charged under this theory and therefore, we do not decide the case on this basis. The only theory submitted to the jury was appellant's guilt under the law of parties.

18. TEX. PENAL CODE ANN. § 7.02(a)(2).

19. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987).

ing. While her question is facially innocuous, given the entire body of evidence, one could interpret it as the elliptical solicitation of a steerer. When Officer Torsiello told her that he was looking for a place to buy crack cocaine, Ms. Whorley negotiated with him to obtain her own supply of the drug. It is not unreasonable to conclude that Ms. Whorley, as someone who evidently partook of crack cocaine herself, maintained some level of contact with individuals selling the drug. At the very least, the evidence shows that Ms. Whorley knew to where to find someone selling crack cocaine. She may or may not have known of appellant in particular; a reasonable jury could have gone either way.

The record similarly contains evidence from which the jury could have inferred that appellant: 1) was aware of Officer Torsiello's presence; 2) knew that Officer Torsiello was the source of the money with which Ms. Whorley paid for the cocaine; and 3) knew that Officer Torsiello would be the ultimate recipient of the cocaine.[20]

None of that evidence is directly conclusive, but it is sufficient, taken together, for the jury to have determined beyond a reasonable doubt that appellant was guilty as a party to Ms. Whorley's actual transfer of cocaine to Officer Torsiello. This is the proposition for which *Miller v. State*[21]

stands, that a jury may look to the circumstances surrounding the offense to determine whether or not an individual is guilty as a party to the delivery of a controlled substance by actual transfer.

The facts in *Miller* are similar to the facts of the present case. In *Miller*, an undercover police officer met an intermediary at a bowling alley and then drove to the defendant's house.[22] When they arrived, the officer remained in the car while the intermediary went to the defendant's front door and knocked.[23] The defendant answered with a small package of LSD already in hand, which he gave to the intermediary.[24] The intermediary then returned to the car and gave the package to the officer.[25] A jury, which received an instruction on the law of parties, subsequently convicted the defendant of delivery of a controlled substance by actual transfer.[26] The court of appeals affirmed the conviction, as did this Court, implicitly finding that the evidence was sufficient for the jury to have found the defendant guilty of an actual delivery under the law of parties.[27] Although our rendition of the facts and analysis in that case could have been more substantial, *Miller's* core holding is still good law: a jury may infer the requisite intent from circumstances surrounding the offense when determining a

20. It was not until Officer Torsiello and Ms. Whorley arrived at the intersection of East Bessie and Virginia Streets that Officer Torsiello actually gave Ms. Whorley thirty dollars in cash. Ms. Whorley then got out of the car and approached appellant. Officer Torsiello waited until Ms. Whorley and the appellant began talking, and then he drove around the block twice. Appellant was present, albeit ten to fifteen feet away, when Officer Torsiello returned a few minutes later and Ms. Whorley went back to the car to get the additional ten dollars. The jury could have reasonably inferred that appellant was aware of Officer Torsiello's presence from that point, especially because Officer Torsiello did not drive around the block this time but waited while

Ms. Whorley and appellant concluded their transaction.

21. 537 S.W.2d 725 (Tex.Crim.App.1976).

22. *Id.* at 726.

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.*

27. *Id.*

defendant's guilt as a party to the delivery of a controlled substance by actual transfer.

In summary, I agree with the majority that the indictment provided appellant with sufficient notice to support his conviction as a party to the delivery of a controlled substance to Officer Torsiello by actual transfer.

WOMACK, J., filed a dissenting opinion, in which MEYERS and JOHNSON, JJ., joined.

The issue in this case is whether a court's charge to the jury may authorize conviction on the theory that the defendant was criminally responsible for the conduct of another when the State did not plead that theory.

In 1996, the defendant engaged in the conduct for which he was prosecuted. At that time, a person committed the offense of delivery of controlled substance if he knowingly or intentionally delivered or possessed with intent to deliver a controlled substance.[1] "Deliver" meant to transfer, actually or constructively, to another, or to offer to sell.[2] There were, therefore, at least four ways to intentionally or knowingly commit such an offense: by actual transfer, by constructive transfer, by possession with intent to deliver, and by offer to sell.

By the law of parties in our Penal Code, a person is criminally responsible as a party to an offense if the offense is committed in any of three ways: by his own conduct, by the conduct of another for which he is criminally responsible, or by both.[3]

Since a person could be criminally responsible as a party in three ways for each of the four ways in which the offense could be committed, there were at least twelve theories of criminal prosecution for an offense of delivery of controlled substance in 1996.

The indictment of this appellant alleged that he did ("intentionally or knowingly deliver to D.A. Torsiello a controlled substance, namely cocaine of less than one gram, including any adulterants or dilutants, by actually transferring said controlled substance"). On its face, this seemed to allege only one theory: actual transfer by the appellant's own conduct. The State presented no evidence of this.

The State's evidence was that the appellant actually transferred cocaine to a person named Whorley, who was buying the cocaine at Torsiello's request, and Whorley transferred the cocaine to Torsiello. This evidence tends to prove an offense in at least four ways: that the appellant, by his own conduct, actually transferred the cocaine to Whorley; that he, by his own conduct, constructively transferred it to Torsiello through Whorley; that he actually transferred it to Torsiello by the conduct of Whorley for which he was criminally responsible; and that he possessed it with intent to transfer.

Although none of these ways was alleged on the face of the indictment, the trial court's charge authorized a conviction under one of these theories: actual transfer to Torsiello by the conduct of Whorley for which the appellant was criminally responsible. The appellant complains that he was not given adequate notice of this theory of criminal culpability. He raised the

---

1. Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 2.02, sec. 481.112(a), 1993 Tex. Gen. Laws 3586, 3705, *amended by* Act of June 15, 2001, 77th Leg., R.S., ch.1188, § 2, 2001 Tex. Gen. Laws 2691, 2691.

2. *See* Tex. Health & Safety Code § 481.002(8).

3. *See* Tex. Penal Code § 7.01(a).

issue by objecting to such an authorization in the court's charge.

It seems to me that we must consider the general law for indictments, our application of this law to indictments of principals and accomplices under former penal codes, and the application of the law to indictments of parties under the present penal code.

## General Law

The generally applicable law of indictments is stated in Article 21.03 of the Code of Criminal Procedure: "Everything should be stated in an indictment which is necessary to be proved." We must be mindful also of the protections of the Sixth Amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation") and Article I, Section 10 of the Texas Constitution ("In all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him").

## Decisions Under Prior Penal Codes

Under prior penal codes, the courts of this state consistently held that the indictment need not allege the particular acts of each principal to an offense.

The law of principals and accomplices was our state's law of criminal responsibility for the conduct of others before 1974. Principals included:

— "persons ... who are guilty of acting together in the commission of an offense,"[4]

— "others [who] are present, and knowing the unlawful intent, aid by acts or encourage by words or gestures, those actually engaged in the commission of the unlawful act, or who not being actually present, keep watch";[5]

— "persons who shall engage in procuring aid, arms or means of any kind to assist in the commission of an offense, while others are executing the unlawful act, and all persons who endeavor at the time of the commission of the offense to secure the safety or concealment of the offenders";[6]

— "one [who] by employing a child or other person who cannot be punished to commit an offense ... by any means ... by which a person may injure himself";[7] and

— a "person who advises or agrees to the commission of an offense and who is present when the same is committed ... whether he aid or not in the illegal act."[8]

Accomplices generally were persons whose acts were all performed before the commission of the offense and who were not present when it was committed. The statute said:

An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense; or

Who agrees with the principal offender to aid him in the commission of the offense, though he may not have given such aid; or

---

4. This was Article 214 of the Penal Code of 1856, Article 74 of the Penal Code of 1879, Article 74 of the Penal Code of 1895, Article 74 of the Penal Code of 1911, and Article 74 of the Penal Code of 1925.

5. Article 66 of Penal Code of 1925.

6. *Id.*, art. 67.

7. *Id.*, art 68.

8. *Id.*, art. 69.

Who promises any reward, favor or other inducement, or threatens any injury in order to procure the commission of the offense; or

Who prepares arms or aid of any kind, prior to the commission of an offense, for the purpose of assisting the principal in the execution of the same.[9]

The leading cases under the former law of principals were decided in 1874. In the first case:

[Joe Cruit,] the appellant is charged, jointly with Charles King, with taking two bales of cotton, with the intent to appropriate them to the use and benefit of himself and said King. The court instructed the jury, if King stole the cotton with the intent to appropriate it to the use of appellant and himself, and appellant was present when said cotton was stolen, and, knowing the unlawful intent of King, did aid by acts in the taking, stealing, and carrying it away, they would find him guilty.[10]

Cruit "insisted, in an ingenious argument," that the court's instruction would have been correct if he had been indicted as a principal, that is, if the indictment alleged that King stole the cotton, and that appellant, knowing the unlawful intent, was present, aiding and assisting him. But since he was indicted as he was, it was wrong for the court's charge to authorize him to be convicted as a principal. Our Supreme Court "regard[ed the argument] as more specious than sound."

The indictment does not, as it seems to be supposed, charge the taking to have been with the intent to appropriate the cotton to the use of King alone, but to the joint use of appellant and King. And if the objection should be sustained, it would result that, in all cases where there are two or more principal offenders, *it would be necessary to set forth in the indictment the particular acts done by each of the parties connected with the transaction.* This certainly has never been the practice in prosecutions of this character, and has always been held to be unnecessary.[11]

Later in the same year, the Supreme Court said that the State could, but was not required to, plead the facts that made a person a principal.

It has been repeatedly held that it is not necessary to allege in the indictment the facts relied upon to show the defendant to be a principal, although the offense with which he is charged may not have been actually committed by him. But if he is a principal offender by reason of the part performed by him in the commission of the offense, he may be convicted under an indictment charging him directly with its actual commission. If, however, the pleader, instead of proceeding under a general indictment, prefers to do so under a special bill charging each of the defendants with the particular acts done or part performed by them respectively, should the facts alleged as to some of them be insufficient to show their guilt, the indictment as to them must be held bad.[12]

In that case, a prodigiously long and detailed indictment[13] failed to allege that

9. *Id.,* art. 70.

10. *Cruit v. State,* 41 Tex. 476, 477 (1874).

11. *Id.,* at 477–78 (emphasis added).

12. *Williams v. State,* 42 Tex. 392, 394 (1874).

13. June 25, 1874, the grand jury of Fayette county presented an indictment charging that Dick King, Ike Smith, Offer Alexander, Henry Williams, and Anderson Satterfield "on the 10th day of December, 1873, with force and arms, in the County of Fayette, State of Texas, did then and there willfully, feloniously, and of their malice aforethought, together and

the principals knew the unlawful intent of the persons who committed the offense. The convictions of the principals were reversed.

### Decision Under the Present Penal Code

One hundred years later, in 1974, the statute enacting a new penal code became effective. Section 7.01 of the code says:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between principles and accomplices are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

The leading case since the changes of 1974 is *Pitts v. State*.[14] There a closely divided Court said:

In the new penal code, the legislature eliminated the distinction between principals and accomplices and the attendant complexities in drafting indictments. Under the former code it was not necessary to allege the facts to show that a defendant was a principal; a principal offender could be charged directly with the commission of the offense although it was not actually committed by him; [citations omitted]; and [the] Penal Code, Sec. 7.01(c) now plainly requires that we hold a party to an offense may be charged with the offense without alleging the facts which make the defendant a party to the offense and criminally responsible for the conduct of another. If the evidence supports a charge on the law of parties,

with each other, by the aid and assistance each of the other," * * * "in and upon the body of one Deitrich Mueller * * * * make an assault. And that the said Dick King, a certain pistol (which said pistol was then and there a deadly weapon, which said pistol was then and there of the value of ten dollars, which said pistol he the said Dick King in his hand then and there had and held) at, to, towards and upon the body of him the said Deitrich Mueller, did then and there draw and present, and that he the said Dick King with the said pistol as aforesaid, did then and there strike, cut, beat, bruise, wound, and abuse him the said Deitrich Mueller, in and upon the head and in and upon the body of him the said Deitrich Mueller, giving to him the said Deitrich Mueller, one dangerous and mortal wound" * * * "and that he, the said Offer Alexander as aforesaid, a certain pistol in his hand then and there had and held (which said pistol was then and there a deadly weapon * *) at, to, towards, and upon the body of the said Deitrich Mueller, did then and there draw and present, and that he, the said Offer Alexander, as aforesaid, with the said pistol did then and there him the said Deitrich Mueller, strike, cut, beat, penetrate, and wound in and upon the head and in and

upon the body of him, the said Deitrich Mueller, giving to him, the said Deitrich Mueller, one dangerous and mortal wound * * * of which said mortal wounds inflicted by them, the said Dick King and Offer Alexander as aforesaid, he, the said Deitrich Mueller, then and there suffered, and suffering did die, and that the said Ike Smith, Henry Williams and Anderson Satterfield, as aforesaid, were then and there present when the said Dick King and Offer Alexander wounded the said Deitrich Mueller as aforesaid, and did then and there aid and abet the said Dick King and Offer Alexander, and did then and there act together and with the said Dick King and Offer Alexander, while they, the said Dick King and Offer Alexander, struck, bruised, beat, and wounded him the said Deitrich Mueller, as aforesaid, and that they, the said Ike Smith, Henry Williams and Anderson Satterfield, as aforesaid, did then and there by threatening gestures and encouraging words aid, abet, assist, and comfort the said Dick King and Offer Alexander in the murder of him the said Deitrich Mueller,"

*Id.*, at 392–93.

14. 569 S.W.2d 898 (Tex.Cr.App.1978).

as it does here, the court may charge on the law of parties even though there is no such allegation in the indictment.[15]

### Analysis

The statement in the *Pitts* opinion that "a party to an offense may be charged with the offense without alleging the facts which make the defendant a party to the offense and criminally responsible for the conduct of another" is subtly different from those in the leading cases under the former penal codes, that the "particular acts" that made one a principal need not be alleged. It seems to me that the 1974 statute did make the change in the rule that was stated in *Pitts*.

Another statement in *Pitts* that "the court may charge on the law of parties even though there is no such allegation in the indictment," is not plainly required, or even justifiable, under the language of the 1974 statute. All that Section 7.01(c) says on the subject of pleading is that "each party to an offense may charged and convicted without alleging that he acted as a principal or accomplice." The law could hardly be otherwise, since there are no longer any such things as principals or accomplices. In the same sentence of the statute, the traditional distinctions between principals and accomplices were abolished, having been replaced (two sentences earlier) by the law of parties. But these statutory provisions do not come close to saying that a conviction may be authorized by a charge on the law of parties when the indictment said nothing like that. I see nothing in Section 7.01 that is contrary to the general command of Article 21.03 that everything be alleged in the indictment that is required to be proved.

The *Pitts* constructions of Section 7.01(c) are not only unsupported by the language of the statute; they also create a conflict with the general law that indictments must allege everything that is required to be proved.

Section 7.01 may be construed in a way that gives effect to both it and Article 21.03, that avoids potential conflicts with the constitutions, and that comports with our decisions under prior penal codes, thus: A person may be charged and convicted without alleging that he acted as a principal or accomplice, as Section 7.01(c) of the Penal Code expressly says. The rights that are recognized in the constitutions, and the statutory command of Article 21.03, require that the State allege (as well as prove) that a defendant may be criminally responsible for the conduct of another. The long history of our decisions under this penal code and its predecessors establish that the allegations need not include the particular acts that make a defendant criminally responsible for the other's conduct. But the indictment must generally allege, in the statutory language, that the defendant is criminally responsible for the conduct of another person who is named.

### Sufficiency of Objection

The State argues that the appellant waived his point by failing to object before trial. Our law usually requires that complaints about lack of notice in an indictment be raised before trial by way of exception to the substance. This requirement obviously cannot be applied to this issue. When an indictment adequately alleges that the defendant committed an offense by his own conduct, there is nothing to indicate that the State may try to prove that he is criminally responsible for the conduct of another. So he cannot be required to except to the indictment because

15. *Id.,* at 900.

it lacks such an allegation. Indeed, this lack of notice is the very evil against which the constitutions and Article 21.03 are directed. If there is nothing in the indictment to suggest such a theory, the first notice to the defendant that the State relies on it may not come until the court proposes to authorize a conviction on such a theory in its charge to the jury. This was the procedure of which the appellant complains in this case. His objection to the court's charge came as soon as the ground of objection became apparent, which is all that can be required.

I would hold that the trial court erred in charging the jury over objection that it could convict the appellant if he was criminally responsible for the conduct of another. I would remand the case to the court of appeals to consider whether this error requires a new trial. I respectfully dissent to the affirmance of this conviction which was obtained without the notice that our laws require.