**Affirm and Opinion Filed January 26, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00946-CR**

**KELVON EUGENE GRAY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 070812**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Kelvon Eugene Gray appeals his conviction for felony murder. In one issue, Gray alleges he suffered egregious harm in the jury charge by the inclusion of language regarding conspiracy. We affirm.

## BACKGROUND

Gray was indicted for the August 24, 2017, felony murder of Tahbari Collins. The indictment alleged Gray did "intentionally and knowingly commit or attempt to commit an act clearly dangerous to human life by discharging a firearm at or into the vehicle" where Collins was a passenger and where Gray was attempting to

commit the felony of Aggravated Assault with a Deadly Weapon or Deadly Conduct by discharging a firearm. TEX. PENAL CODE § 19.02(c). Gray pleaded not guilty and the case proceeded to trial.

By agreement at trial, the State read the deposition transcript of Collin Cross. Cross stated as he approached mile marker fifty-three near Howe, Texas, traffic slowed and he saw a grey car in the break-down lane where a young man was pleading for medical help. Cross stopped to assist and saw another young man in the passenger seat of the vehicle and a young woman trying to assist him. Cross noticed a bullet wound to the passenger's chest and stated the man appeared lifeless. Due to the highway traffic, Cross said he could not approach him from the passenger side but he attempted to assist him from the driver's side but felt no pulse and saw no breathing. Cross related prior to encountering the grey car, he had noticed a black car pass him at a high rate of speed but lost sight of it as it went over an overpass.

Jesika Spencer was a passenger in the grey car Cross encountered and testified she, Collins, and Demarcus Griffin drove from Houston, Texas to Oklahoma that day to sell cookies for a fundraiser. Spencer said they were in Collins's car and ended up at a Wal-Mart near Tulsa, Oklahoma. After selling the cookies, the trio intended on returning to Houston. According to Spencer, when they stopped at a gas station near Tushka, Oklahoma, Griffin said he saw a "guy" he knew that might have marijuana. At trial, Spencer identified Gray as the "guy" Griffin and Collins spoke to about purchasing marijuana. She said Griffin and Collins spoke to Gray through

the passenger window and Gray said he had some of his personal marijuana that he would sell them. Gray walked to a black car, came back to their grey car, put some marijuana in Collins's hand, and walked off. Spencer testified that Griffin, who was driving, "just drove off," and as they drove away, she turned and looked at Gray who "looked shocked and upset." The trio stopped again to purchase a cigar to smoke the marijuana in, and after she smoked, Spencer fell asleep in the backseat. She stated she awoke to what she described sounded like a balloon popping, heard bullets coming at their car, felt the car start swerving, and heard Collins say he had been shot. When the car stopped, she climbed into the front seat to try to help Collins but he ended up dying. Spencer admitted she did not initially tell the police about the gas station marijuana purchase because she was afraid, but did disclose the information to them later.

Howe Police Department Detective Keith Milks testified he was the first to arrive to the scene and could tell Collins was already deceased. He stated all of the windows were up on the grey car and it did not smell like a gun had been discharged inside the car. He saw five bullet holes on the passenger side of the grey car but was unable to locate any shell casings in the search of the surrounding area. Detective Milks testified that three bullets entered the car: one was found embedded in the passenger seat and two projectiles were removed during Collins's autopsy. He also found marijuana residue in the grey car. The bullets were submitted to the Department of Public Safety crime lab firearms section in 2017. James Jeffress, the

firearms section supervisor, testified he determined the bullets were fired from a .38 caliber class of handgun, which could include a "9 millimeter Luger, .357 Sig, or .38 Superauto" type gun.

Texas Department of Public Safety Ranger Reuben Mankin assisted on the investigation and went to the Oklahoma Wal-Mart the trio had been at to attempt to determine what had occurred. He testified that he eventually ended up at the Tushka gas station and obtained surveillance video showing the grey car and the black car Spencer testified about. The video showed two people enter the black car but he was unable to identify them. Based on the video, he stated the time between when the grey car left the Tushka gas station to when the black car left was seven minutes. Ranger Mankin found additional video further down the road in Calera showing the vehicles were only two minutes apart by that point. Law enforcement obtained search warrants for cell phone tower records in the area and eventually were led to cell phone pings from Montre Austin's phone. A search of Facebook profiles showed that Austin, Sekou Finley, and Gray were all friends and took a trip to Dallas around the time of the shooting.

After placing Austin and Finley in the area and identifying Finley from the Tushka gas station footage, law enforcement traveled to Kansas City, Missouri in 2019, and interviewed Finley and Austin. Based on information known law enforcement obtained a search warrant for Gray's home in Kansas City. During the search of Gray's home, a .9 millimeter Taurus handgun was found in a kitchen

–4–

drawer. Law enforcement also obtained a .9 millimeter Smith and Wesson handgun during a search of Austin's black car. The weapons seized were submitted to the DPS crime lab firearms section and tested by Jeffress. He explained he test-fired both guns to compare the bullets to the ones he previously reviewed. Jeffress stated he could not identify or eliminate the bullet jacket fragments from the Taurus handgun, but he could eliminate the Smith and Wesson handgun as having fired the bullets submitted. It was Jeffress's opinion that the bullets law enforcement submitted to him in 2017 were fired from the Taurus .9 millimeter gun.

Finley testified under subpoena from the State. He stated he had been good friends with Gray since they were children. Finley explained that in August 2017, he, Gray, and Austin traveled to Dallas to "party" and shop. On the way to Dallas, Finley said he was drinking "jungle juice" and became extremely intoxicated. He remembers stopping at the Tushka gas station where he vomited multiple times due to his intoxication level. Finley stated he went inside the gas station and was vomiting in the bathroom when Gray came in and told him they needed to leave. Finley got into the passenger side of the black car and fell asleep. He testified he does not remember the marijuana transaction, a silver car, or the shooting. Finley explained the next thing he remembered was waking up in their Dallas Airbnb rental the following morning, but he did not remember getting to Dallas. After he woke up, Finley cleaned the car because of the vomit inside but did not see any shell casings.

He was aware that Gray and Austin both had a handgun but did not know where either of them kept their guns.

Austin also testified about their Dallas trip. He said they took his black car and he drove the beginning portion from Kansas City. The men later changed drivers, and Austin began drinking "jungle juice." Austin stated he became "pretty intoxicated," laid down in the backseat, and fell asleep. He did not remember stopping at the Tushka gas station or seeing a silver car. He confirmed the black car seen in the photos was his 2012 Toyota Camry, and although there was damage in the photographs, that damage was from different wrecks, not this incident. Austin described waking up because he heard gunshots, sitting up, and seeing a grey car to their left swerving. He realized the gunshots were coming from inside his car and stated Gray was the one shooting. Austin described Gray as driving with his left hand on the steering wheel and shooting with his right hand, across his body. Austin stated he grabbed his gun from the center console but he never shot. The grey car Austin saw swerving eventually stopped, but Grey continued driving. Austin relayed to the jury the conversation he had with Gray during which Gray told him that he was "basically robbed" of marijuana, told the grey car to pull over, and a "shootout occurred." After their conversation, Austin fell back asleep and woke up at the Airbnb. He said they had to carry Finley inside because he could not walk and Finley never woke up during the gunshots. Austin also stated Gray told him he thought he

might have hit the passenger of the grey car. Austin testified there were no bullet holes in his car and that he did not call or report this incident to anyone.

The jury charge contained the offenses alleged in the indictment, a law-of-parties instruction, and language regarding conspiracy. The jury found Gray guilty of felony murder and the trial court sentenced him to sixty years' imprisonment. This appeal followed.

## ANALYSIS

By his sole issue, Gray alleges he was egregiously harmed because the language of the jury charge permitted the jury to find him guilty of felony murder if it found he committed only the lesser offense of conspiracy to commit murder. Specifically, he complains it was error to define "conspiracy" in the abstract portion of the jury charge and to include a "conspiracy" instruction in the application portion of the jury charge that could have allowed the jury to consider conspiracy when determining its verdict.

## I. Standard of Review and Charge Error

The purpose of the trial court's jury charge is to instruct the jurors on the law applicable to the case. *See* TEX. CODE CRIM. PROC. art. 36.14. The charge is the instrument with which the jury convicts; therefore, it must be an accurate statement of the law and set out the essential elements of the offense. *Fields v. State*, — S.W.3d—, —, No. 01-20-00280-CR, 2022 WL 3268525, at *3 (Tex. App.—

–7–

Houston [1st Dist.] Aug. 11, 2022, pet. ref'd). A jury charge that improperly states the law or the elements of an offense is erroneous. *Id.*

All alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Appellate review of purported error in a jury charge involves a two-step process. *Id.* First, we determine whether the jury instructions are erroneous. *Id.* Second, if error occurred, then an appellate court must analyze the error for harm. *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether error was preserved or not. *Id.*

The failure to preserve a jury-charge error is not a bar to appellate review but rather establishes the degree of harm necessary for reversal. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Harm is assessed in light of the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence, the parties' arguments, and all other relevant information in the record. *Alcoser v. State*, —S.W.3d—, —, No. PD-0166-20, 2022 WL 947580, at *3 (Tex. Crim. App. Mar. 30, 2022); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

If the "defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for 'egregious

harm' under *Almanza*." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)). As in this case, when an "appellant d[oes] not object to the charge, the error does not result in reversal 'unless it was so egregious and created such harm that appellant was denied a fair trial.'" *Warner*, 245 S.W.3d at 461 (quoting *Almanza*, 686 S.W.2d at 171). "Errors that result in egregious harm are those that affect the 'very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id*. at 461–62 (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). To establish egregious harm, the "appellant must have suffered actual, rather than theoretical, harm." *Id*. at 461.

## II.     There was no Egregious Harm in the Jury Charge

Gray did not object to the charge of the court, so egregious harm must be found in order to sustain his issue. In order to determine if there was jury charge error, we first must determine if it was error to include the language regarding conspiracy in the jury charge. *See Kirsch*, 357 S.W.3d at 649. The State argues that the language regarding conspiracy was included in the charge as alternative law-of-parties language. There was testimony presented that the black car Gray occupied contained two other individuals, one of which admitted to having a gun in the car. Such evidence supports a finding that the jury could have believed Gray did not act alone in shooting the grey car and killing Collins. Therefore, it was not error to include language allowing the jury to find Gray guilty using a law-of-parties

–9–

determination. However, assuming without deciding it was error to include the language regarding conspiracy, we will look to see if the complained-of language was egregiously harmful.

In order to determine if any harm was egregious, we look at the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence, the parties' arguments, and all other relevant information in the record. *Alcoser*, 2022 WL 947580, at \*3. The charge laid out the definitions for felony murder, aggravated assault, and deadly conduct. Next, it instructed the jury on the law of parties. *See* TEX. PENAL CODE §§ 7.01, 7.02. It also included a definition for conspiracy. *See id.* § 15.02. The charge stated:

> A person is criminally responsible as a party to an offense if the offense is committed by his conduct, by the conduct of another for which he is criminally responsible for, or by both.

> Each party to an offense may be charged with the commission of the offense.

> If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in the furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

> A conspiracy is committed if, with intent that a felony be committed, a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and he or more of them performs an overt act in pursuance of the agreement. An agreement constituting a conspiracy may be inferred from the acts of the parties.

Now, if you find from the evidence beyond a reasonable doubt that on or about August 24, 2017, in Grayson County, Texas, the defendant Kelvon Eugene Gray did intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, namely, discharging a firearm at or into the vehicle in which Tahbari Collins was then and there situated, that caused the death of Tahbari Collins, and the defendant was then and there in the course of intentionally or knowingly committing a felony, namely Aggravated Assault with [D]eadly Weapon or Deadly Conduct - Discharge Firearm, and the death of Tahbari Collins was caused while the defendant was in the course of and in furtherance of, or in immediate flight from the commission or attempt of the felony; or,

If you find from the evidence beyond a reasonable doubt that the defendant Kelvon Eugene Gray entered into a conspiracy with Montrae Austin or Sekou Finley to commit the felony offense of Aggravated Assault-Deadly Weapon or Deadly [C]onduct-Discharge Firearm and that on or about August 24, 2017, in Grayson County, Texas, in the attempt to carry out this agreement, if any, Montrae Austin or Sekou Finley did commit an overt act of arming himself with a firearm, and shooting a firearm into the motor vehicle in which Tahbari Collins was situated, and the said Montrae Austin or Sekou Finley did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, namely, shooting into a motor vehicle on which Tahbari Collins was situated that caused the death of Tahbari Collins, and the said Montrae Austin or Sekou Finley was then and there in the course of committing a felony, namely Aggravated Assault–Deadly Weapon or Deadly Conduct–Discharge Firearm, and the death of Tahbari Collins was caused while the said Montrae Austin or Sekou Finley was in the course of and in furtherance of or in immediate flight from the commission or attempted commission of said felony, and you further find beyond a reasonable doubt, that the shooting death of Tahbari Collins [Judge's initials] was committed in furtherance of the unlawful purpose of the conspiracy to commit Aggravated Assault or Deadly Conduct and was an offense that should have been anticipated by the defendant, Kelvon Eugene Gray, as the result of carrying out the agreement;

. . . .

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible for, or by both. Mere presence alone, however, will not constitute one a party to an offense.

The law-of-parties instruction may be included in the charge if evidence has been presented at trial to support the theory. *Marable v. State*, 85 S.W.3d 287, 288 (Tex. Crim. App. 2002) ("[I]t is well-settled that the law of parties need not be pled in the indictment."). This is true even if the indictment alleges only the defendant acted as a principal actor. *Id*. To determine whether the evidence supports the submission of the instruction, the trial court may consider evidence of events that occurred before, during, or after the commission of the crime. *Ryser v. State*, 453 S.W.3d 17, 28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Submission of one theory does not prohibit the submission of another theory. *Id*. "Even if there is 'strong' evidence to support a conviction of a defendant under the theory that he was the principal actor, so long as there also is evidence that would support the alternate theory that he acted as a party to the offense, the prosecution may submit both theories and the trial court may include a jury instruction on the law of parties. *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996). When "the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)).

Gray argues that "conspiracy is not a lesser-included offense of murder," and it is a "separate and distinct offense" that was not contained in the indictment. He states the inclusion of the instructions regarding conspiracy "permitted the jury to convict [Gray] for a crime different from that described in the indictment." In *Montoya v. State*, the court of criminal appeals addressed a similar argument: Montoya argued,

> The inclusion of the theory of conspiracy in the court's charge . . . constituted fundamental error because the offense of conspiracy had not been alleged in the indictment . . . and since he had no notice he was being charged with the offense of criminal conspiracy, the jury was erroneously instructed on an alternate theory of conviction.

> [Montoya was] mistaken in his argument. The court's charge did not instruct the jury to consider whether appellant was guilty of the separate offense of criminal conspiracy as set out in Section 15.02. Rather the court's charge merely contained an alternative "parties" charge as provided in [penal code § 7.02(b)].

810 S.W.2d 160, 165 (Tex. Crim. App. 1989); *see also Gilmore v. State*, 397 S.W.3d 226, 245 (Tex. App.—Fort Worth 2012, pet ref'd). The same analysis applies here. The jury charge did not permit the jury to convict Gray of conspiracy to commit felony murder. The conspiracy language was an alternate law-of-parties instruction included due to the testimony presented by Austin and Finley. It was not egregious error to include a law-of-parties instruction or include the conspiracy language as an alternative law-of-parties instruction in the jury charge.

Next, we must evaluate the state of the evidence. Gray argues the jury could have found him guilty of only conspiracy, although it was not alleged in the

–13–

indictment. However, to accept that argument, would require the jury to completely disregard the evidence presented. Spencer testified she saw Gray interacting with Collins and Griffin. Gray's handgun matched the bullets submitted to the crime lab. Austin testified he saw Gray shooting at the grey car while driving Austin's black car. Austin also admitted to having a firearm, grabbing when he awoke to gunshots, but never firing it. The Tushka gas station surveillance shows Gray and Finley inside the store, Gray speaking to people in a grey car, and Gray making or receiving a phone call while at the gas station. Finley testified to be extremely intoxicated and throwing up at Tushka, stating he did not see a grey car, and explaining he fell asleep in the car, only to wake up the following morning in Dallas. Based on the evidence presented, the jury could have reasonably believed Gray was the primary actor in the shooting that caused Collins's death. The law-of-parties instructions was most likely unnecessary, but it was not egregious error to include it.

Third, we evaluate the arguments of the parties. The State referenced and explained conspiracy during its closing argument four different times, even stating to the jury,

> How would [Finley] or [Austin] know that this silver car right here is full of people that stiffed us on a marijuana deal and need to be shot if [Gray] didn't point it out to them, tell them about it, and give them his gun? And if that is what you think happened, because we know [Gray's] gun is the murder weapon, that is a conspiracy to commit aggravated assault or deadly conduct, it is in furtherance of the conspiracy, and [Gray] should have anticipated what was going to happen.

Although conspiracy is referenced in the State's closing argument, the arguments still fit under the law-of-parties instruction and conspiracy was included as an alternative means to describe law-of-parties. The arguments were not egregiously harmful.

Finally, we evaluate any other relevant information. Gray argued in closing that Finley and Austin had reasons to point the blame at him and gain favor with the State, as they were not charged in the shooting. However, even if both witnesses changed parts of the story to place blame on Gray, under the law-of-parties, the jury could have reasonably still found him guilty of felony murder. Gray's argument does not show egregious harm in the inclusion of the alternative party language.

Gray has not shown that he suffered any actual harm as required under an egregious harm standard. All the evidence presented to the jury showed Gray to be the main participant in the situation involving the occupants of the grey car, which led to Collins's death. The jury charge contained no error and Gray fails to show how he was egregiously harmed by the complained-of language. We overrule Gray's sole issue.

## CONCLUSION

Under this record, we conclude the inclusion of the conspiracy language as an alternate law-of-parties instruction was proper and the jury charge did not allow for

a conviction on conspiracy to commit murder. Gray has not shown egregious and actual harm. We overrule his sole issue and affirm the judgment of the trial court.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).
210946F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

KELVON EUGENE GRAY,
Appellant

No. 05-21-00946-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas

Trial Court Cause No. 070812. Opinion delivered by Justice Partida-Kipness. Justices Molberg and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of January 2023.