COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| DEBORAH MALONE WILSON, | § | No. 08-11-00042-CR |
| Appellant, | § | Appeal from |
| v. | § | 355th District Court |
| THE STATE OF TEXAS, | § | of Hood County, Texas |
| Appellees. | § | (TC # CR11442) |

## O P I N I O N

Deborah Malone Wilson is appealing her conviction of murder. A jury found Appellant guilty and assessed her punishment at imprisonment for ninety-nine years. We affirm.

## FACTUAL SUMMARY

Appellant lived on property adjoining property owned by her eighty-two-year-old father, George Malone, and her brothers, David Malone, and Danny Malone. George's attorney, Andrew Ottaway, had represented George for approximately twenty years. George owned property in the River Run subdivision and he deeded portions of the property to his children, including Appellant, David, and Danny. Ottaway prepared the deeds. Ottaway characterized Danny as the peacemaker in the family, but Danny had been convicted of a felony DWI and incarcerated. When asked whether the Malones needed a peacemaker, Ottaway answered affirmatively and said: "They were a scrappin' bunch." When asked to explain what he meant, Ottaway testified: "They were rough people, they drink a little too much, and it got sideways sometimes." Ottaway saw the relationship between George, David, and Appellant deteriorate after Danny became incarcerated. With Ottaway's assistance, Danny revoked a power of attorney he had given to Appellant and he instead gave his father power of attorney. This had

the effect of cutting off Appellant's access to Danny's finances. Part of the family dispute also stemmed from George's threats to cut off the water to David's and Appellant's homes because he was angry they were not paying him for their share of the water.

During the summer of 2009, George spoke to Ottaway about obtaining a family violence protective order. After filing the application on August 10, 2009, Ottaway initially had difficulty getting a hearing date, so he spoke with Appellant and David at his office in an effort to resolve the situation. David indicated that he would sign an agreed mutual protective order but Appellant was unhappy and did not want to sign anything without studying it first. When David and Appellant did not sign the agreed protective order, Ottaway increased his efforts to get a hearing date because he saw the dispute "escalating." A process server, Randy Jaquess, served the application on Appellant and David on August 14, 2009. The county court at law set a hearing for October 7, 2009. In early September 2009, Yates Malone, one of Appellant's brothers, had a conversation with her. Yates described her as being irate about issues she had with their father. Appellant knew that George had filed an application for a protective order. Appellant told Yates that her father "just needed to die."

Tyler Dempsey is a neighbor of George Malone and the other Malone family members. He frequently saw George working around the property and in the vegetable garden. Dempsey knew that Appellant had a "rocky" relationship with her father as he had observed her cursing at George and making obscene gestures. On September 28, 2009, Dempsey and his mother were sitting on their porch when they saw two people rolling around on the ground in the vegetable garden. Appellant held George by the shoulders while David kicked him in the head. Dempsey did not want to get involved at first, so he just watched. But when he saw David Malone kick George in the head like a person kicking a football, Dempsey ran over to the garden while his

mother called 911. Even after George went limp from the blow, Appellant held George and David kicked him in the head a second time. As Dempsey ran to the garden, he saw some men who were installing a septic system and asked them for help. When Dempsey got to the garden, he saw that Appellant and George were on the ground. Appellant had her arms wrapped around George's legs and George was holding her by the hair with his arms outstretched as though he was attempting to push her away from him. Dempsey screamed at them to let go of each other and they did. Law enforcement officers and emergency medical personnel arrived a short time later. In addition to several head wounds, George also had fresh bite marks on his back, arm, leg, and ear and gouging injuries on his shoulder consistent with injuries caused by fingernails. Mary Gerdes, a volunteer EMT, asked George what had caused the injuries and he said that Appellant had bit and kicked him. Appellant and David were taken into custody. Appellant, who was covered in George's blood, repeatedly stated that she had beaten her father and she hoped that he died. Although George was airlifted from the scene and received medical treatment, he died from traumatic brain injury.

A grand jury returned a three-count indictment against Appellant charging her with murder (Count I), serious bodily injury to an elderly person (Count II), and bodily injury to an elderly person (Count III). The State later dismissed Counts II and III and tried the murder count to a jury. The jury charge included instructions on self-defense and the law of parties. The jury rejected Appellant's claim of self-defense and convicted her of murder as alleged in the indictment.[1] Appellant raises eight issues on appeal.

## DENIAL OF CONFRONTATION

In her first two issues, Appellant alleges that the admission of evidence violated her right

---

[1] A jury also convicted David Malone of George Malone's murder and the Second Court of Appeals affirmed that conviction. *Malone v. State*, Cause No. 02-10-00436-CR, 2011 WL 5118820 (Tex.App.--Fort Worth Oct. 27, 2011, no pet.).

of confrontation guaranteed by the Sixth Amendment and Article I, Section 10 of the Texas Constitution. Appellant has not shown that Article I, Section 10 provides greater protection than the Sixth Amendment. Therefore, we will not review Appellant's claim of state constitutional error and will restrict our analysis to the Sixth Amendment. *See Lagrone v. State*, 942 S.W.2d 602, 612 (Tex.Crim.App. 1997)(declining to address claim of state constitutional error where the appellant failed to show that the Texas Constitution provides greater protection than the Fifth Amendment).

*Applicable Law and Standard of Review*

The Sixth Amendment's Confrontation Clause provides that an accused has the right, in all criminal prosecutions, to be confronted with the witnesses against him. U.S.CONST. AMEND. VI. In accordance with this right, the admission of out-of-court statements offered against the accused that are "testimonial" in nature are objectionable unless the prosecution can show that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004); *Langham v. State*, 305 S.W.3d 568, 575 (Tex.Crim.App. 2010); *King v. State*, 189 S.W.3d 347, 358 (Tex.App.--Fort Worth 2006, no pet.). The United States Supreme Court has identified three kinds of out-of-court statements that could be regarded as testimonial:

(1) ex parte in-court testimony or its functional equivalent--that is, materials such as affidavits, custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially;

(2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and

(3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

- 4 -

*Langham*, 305 S.W.3d at 576; *Wall v. State*, 184 S.W.3d 730, 734-35 (Tex.Crim.App. 2006), *quoting Crawford*, 541 U.S. at 51-52, 124 S.Ct. at 1364.

Generally, we review a trial court's decision on the admission of evidence for an abuse of discretion. *Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001). Whether a particular out-of-court statement is testimonial is a question of law. *Langham*, 305 S.W.3d at 576. Consequently, we will defer to the trial court's resolution of credibility issues and historical facts, but we will review *de novo* the ultimate constitutional question of whether the facts as determined by the trial court establish that an out-of-court statement is testimonial. *Id.*

*George Malone's Out-of-Court Statement*

In her first issue, Appellant contends that the admission of George's application for a protective order violated her right of confrontation. The trial court admitted into evidence, over Appellant's objection based on the Confrontation Clause, George Malone's application for a protective order (State's Exhibit 64) which stated as follows:

> George Malone, Applicant, asks for a protective order and would show the Court the following:
>
> Applicant lives at 7912 River Run, Granbury, Texas 76049.
>
> Deborah Ann Malone lives in River Run, Granbury, Texas, on a street with no address, across the street from 7912 River Run where she can be served with citation.
>
> David Lee Malone lives in River Run, address 7908 River Run, Granbury, Texas, where he can be served with citation.
>
> David Lee Malone and Deborah Ann Malone are children of George Malone. George Malone gave them the property next door to him to build their homes on, and they both live next door to him.
>
> Every few days, Deborah Ann Malone and David Lee Malone come to the home of George Malone, drinking, and causing trouble, and they take things from his property. Applicant seeks a protective order keeping them away from the

property, and away from him.

Most recently, on August 6, 2009, George Malone was mowing a lot in River Run. Deborah Ann Malone came close to George Malone, holding a long neck beer bottle, yelling at George Malone something he could not understand. Later in the day, she came to the property next door to him and started breaking limbs off of a pecan tree. She drove her car from her house to the trailer next to George Malone's house, driving back and forth, driving real slow. George Malone called the sheriff's department, but they could not get her to come to the door. As soon as the deputy left, Deborah Ann Malone came back out of her house.

David Lee Malone was with Deborah Ann Malone some of the time on August 6, 2009, yelling, trying to get George Malone to respond. George Malone would not get off of his lawn mower, and refused to confront him.

Today, as George Malone left his home to come to apply for this protective order, Deborah Ann Malone was sitting out in her yard, and she made obscene gestures toward him as he drove away.

Wherefore, premises considered, George Malone requests that the Court order Deborah Ann Malone and David Lee Malone to appear and answer, and that upon hearing the Court make orders preventing them from:

Committing family violence;

Communicating in a threatening or harassing manner with George Malone;

Engaging in conduct directed toward George Malone that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass him.

The application is signed by George's attorney, Andrew Ottaway, and the statements of fact contained within the application are sworn to by George. A process server, Randy Jaquess, served the application on Appellant and David on August 14, 2009. When the application was admitted, the trial court, at the State's request, instructed the jury that the application was not introduced to prove the truth of the matter asserted in that document but to show the state of mind of Appellant and her brother, David.

We do not understand Appellant to argue that the trial court erred by admitting any

- 6 -

evidence that George had filed an application for a protective order, but rather, she complains about the allegations of fact contained within that application. The application, State's Exhibit 64, contains numerous allegations of fact verified by George. While Appellant objected to the introduction of State's Exhibit 64, she did not continuously object each time the State offered evidence establishing at least some of the same facts contained within the application. To preserve error, a party must continue to object each time inadmissible evidence is offered or obtain a running objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex.Crim.App. 2004). Error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.*

The State introduced other evidence establishing that George gave Appellant and David the property on which they lived and the relationship of the parties. Andrew Ottaway testified regarding the volatile nature of the family relationship and the ongoing dispute between George and Appellant which preceded George's murder. Ottaway also testified about filing the application for a protective order and what George wanted to achieve by filing it, namely, for Appellant and David to leave him alone. A neighbor, Tyler Dempsey, testified that he had observed Appellant giving George "the finger" and directing inappropriate language toward him. We conclude that Appellant failed to preserve her complaint regarding the admission of the portions of State's Exhibit 64 regarding these facts. Appellant did preserve her complaint regarding the portion of State's Exhibit 64 setting forth her specific conduct committed on August 6, 2009, namely, she yelled at George while holding a beer bottle, broke limbs off of a pecan tree, and drove slowly back and forth in front of his property. We conclude that this portion of the application is testimonial under *Crawford* because it is the functional equivalent of in-court testimony that a declarant would reasonably expect to be used in the prosecution of a

request for a protective order. This does not end our inquiry because the Supreme Court noted in *Crawford* that the Confrontation Clause does not bar the use of testimonial statements offered for purposes other than establishing the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. at 1369, *citing Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). When the relevance of an out-of-court statement derives solely from the fact that it was made, and not from the content of the assertion it contains, there is no constitutional imperative that the accused be permitted to confront the declarant. *Langham*, 305 S.W.3d at 576.

The State argues on appeal, as it did in the trial court, that it did not offer the application to prove the truth of the factual allegations contained therein but to show that Appellant had notice that her father did not want her on his property, he did not want her to threaten him, and he did not want her to commit acts of family violence against him. Under this theory, the relevance of State's Exhibit 64 derives solely from the fact that George filed the application containing these allegations and a process server served the application on Appellant. Stated differently, the State did not offer State's Exhibit 64 to prove that Appellant yelled at George while holding a beer bottle, broke limbs off a pecan tree, or drove slowly in front of his property. We conclude that the admission of this exhibit did not violate Appellant's right of confrontation.

Even if the trial court erred, we would be required to determine whether the error is harmless under the standard for constitutional error in TEX.R.APP.P. 44.2(a). Under that standard, we are required to reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX.R.APP.P. 44.2(a). The evidence at trial established that the family members had a volatile relationship and there had been an ongoing dispute between Appellant and her father over who should control Danny's finances. There is also evidence that George

filed an application for a protective order against Appellant and David in early August 2009. George's attorney attempted to secure an agreed mutual protective order by discussing the matter with Appellant and David because he saw that the problem was escalating. A few weeks after the protective order application was served on Appellant, she spoke with one of her brothers about her dispute with their father and told him that George just needed to die. The factual statements contained within the application depict Appellant's animosity towards her father and her harassment of him but there is other evidence in the record establishing that this was the nature of the relationship. Given this evidence in the record, we find beyond a reasonable doubt that the admission of State's Exhibit 64 did not contribute to Appellant's conviction or punishment. We overrule Issue One.

### *George's Statement to Mary Gerdes*

In Issue Two, Appellant argues that the trial court abused its discretion by admitting the testimony of Mary Gerdes. On September 28, 2009, Gerdes was working as a volunteer with Pecan Planation EMS. Gerdes had been an EMT for six years but she had become an "intermediate" after receiving additional training. She and her partner were dispatched to the scene of the assault involving George Malone. They arrived after the scene had been secured and she began taking a medical history from George. When she asked George what was wrong with him, he said "She bit me, and he kicked me." The trial court overruled Appellant's hearsay and confrontation objections. Gerdes identified Appellant as the only female present at the scene.

In Issue One, we focused the analysis on the first category of testimonial evidence, but this issue is related to the third category: statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for

use at a later trial. George's statement to Gerdes regarding the origin of his injuries was not testimonial for purposes of the Confrontation Clause and *Crawford*. *See Malone*, 2011 WL 5118820 at \*3. The primary purpose of this statement was not to provide testimony or develop facts for later litigation but to provide information to medical personnel about the nature of the injuries. *See id.* Viewed objectively, George's statement to the EMT was made to enable assistance to meet an ongoing medical emergency and not to establish or to prove past events potentially relevant to later criminal prosecutions. *Id.*, *citing Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006). The trial court did not abuse its discretion by overruling Appellant's objection based on the Confrontation Clause. Issue Two is overruled.

## ADMISSION OF AUTOPSY PHOTOGRAPH

In Issue Three, Appellant argues that the trial court abused its discretion by admitting State's Exhibit 60, a photograph of the victim's brain taken during the autopsy, because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Relevant evidence is generally admissible, but it is properly excluded under Rule 403[2] when its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403; *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). In keeping with the presumption of admissibility of relevant evidence, trial courts should favor admission in close cases. *Casey*, 215 S.W.3d at 879; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App. 1991)(op. on reh'g).

The term "probative value" refers to the inherent probative force of an item of evidence -- that is, how strongly it serves to make more or less probable the existence of a fact of

---

[2] Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.EVID. 403.

consequence to the litigation -- coupled with the proponent's need for that item of evidence. *Casey*, 215 S.W.3d at 879; *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006). When conducting the balancing test under Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the following countervailing considerations listed in the rule. *Casey*, 215 S.W.3d at 879. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-42.

Relevant factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice include the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Williams v. State*, 301 S.W.3d 675, 690 (Tex.Crim.App. 2009). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Id*. The admissibility of photographs over an objection is within the sound discretion of the trial court. *Davis v. State*, 313 S.W.3d 317, 331 (Tex.Crim.App. 2010). Consequently, the trial court's ruling on the admissibility of photographs is reviewed under an abuse of discretion standard and will not be disturbed on appeal unless it falls outside the zone of reasonable disagreement. *Young v. State*,

283 S.W.3d 854, 874 (Tex.Crim.App. 2009).

Dr. Shiping Bao, the Tarrant County Deputy Medical Examiner, testified regarding the autopsy of the victim. State's Exhibit 60 is a photograph of the victim's brain after it was removed from the body. It depicts a large 2.5 inch by 2.5 inch hemorrhage on the left occipital lobe which caused a midline shift of the brain and resulted in the victim's death. Dr. Bao explained that the injury was caused by blunt force trauma to the victim's head. Exhibit 60 is the only photograph from the autopsy offered into evidence by the State. It has substantial probative value because it depicted the fatal injury to the brain sustained during the assault as the result of blunt force trauma to the head. Thus, the photograph assisted the jury in understanding the nature of the injury and the cause of death. It is not excessively gruesome and there is nothing to indicate that the jury would have given it undue weight. Likewise, the evidence would not have caused the jury to make its decision on an improper basis. We conclude that the trial court did not abuse its discretion by overruling Appellant's Rule 403 objection and admitting the autopsy photograph. *See Davis*, 313 S.W.3d at 331 (trial court did not abuse discretion by overruling Rule 403 objection and admitting autopsy photograph depicting cross-section of victim's tongue; photograph was not excessively gruesome and was necessary to show an injury not otherwise visible). We overrule Issue Three.

## LESSER-INCLUDED OFFENSES

In Issue Four, Appellant contends that the trial court erred by failing to instruct the jury on the lesser-included offenses of criminally negligent homicide, manslaughter, and aggravated assault. She admits that she did not request that the trial court include instructions on any of these lesser-included offenses in the charge, but she argues, in effect, that the trial court had a *sua sponte* duty to do so and the absence of these instructions caused egregious harm.

The trial judge has a duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. TEX.CODE CRIM.PROC.ANN. Art. 36.14 (West 2007); *Delgado v. State*, 235 S.W.3d 244, 249 (Tex.Crim.App. 2007). The judge does not have a *sua sponte* duty to instruct the jury on lesser-included offenses. *Tolbert v. State*, 306 S.W.3d 776, 780 (Tex.Crim.App. 2010); *Delgado*, 235 S.W.3d at 249. Because Appellant did not request these instructions, the trial court did not err by failing to include them in the charge. In the absence of error in the charge, we do not review the charge for egregious harm under *Almanza*.[3] *Tolbert*, 306 S.W.3d at 782; *Posey v. State*, 966 S.W.2d 57, 61 (Tex.Crim.App. 1998). Issue Four is overruled.

## SUDDEN PASSION

In Issue Five, Appellant asserts that she suffered egregious harm from the trial court's failure to instruct the jury on the issue of sudden passion in the punishment charge. Appellant admits that she never requested that an instruction on sudden passion and the record reflects that she did not object to the punishment charge.

At the punishment stage of a murder trial, the defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX.PENAL CODE ANN. § 19.02(d)(West 2011); *Swaim v. State*, 306 S.W.3d 323, 324 (Tex.App.--Fort Worth 2009, pet. ref'd). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree. TEX.PENAL CODE ANN. § 19.02(d); *Swaim*, 306 S.W.3d at 324. The trial court is not required to instruct the jury on the issue of sudden passion in the absence of a request by the defendant. *Swaim*, 306 S.W.3d at 324. Issue Five is overruled.

## CONCURRENT CAUSATION

---

[3] *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984).

In Issue Six, Appellant argues that the trial court erred by failing to instruct the jury on the issue of concurrent causation. She concedes that she did not request an instruction on concurrent causation. Section 6.04(a) of the Texas Penal Code provides that: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX.PENAL CODE ANN. § 6.04(a)(West 2011). The Fort Worth Court of Appeals has held that concurrent causation is a defensive issue. *Oberlander v. State*, No. 02-09-00395-CR, 2011 WL 1833097 at *3 (Tex.App.--Fort Worth 2011, pet. ref'd). An unrequested defensive issue is not the law applicable to the case. *Id.* A trial judge does not have a *sua sponte* duty instruct the jury on a defensive issue. *Delgado*, 235 S.W.3d at 249. In the absence of a request by Appellant for this instruction, the trial court did not err by failing to include it in the court's charge. Issue Six is overruled.

## MANNER AND MEANS UNKNOWN

In her seventh issue, Appellant contends that the trial court erred by including in the jury charge an instruction which permitted the jury to find Appellant guilty under the third paragraph of Count I because the trial court failed to conduct a hearing to determine if the manner and means were still unknown. In support of this argument, she cites a decision of the Court of Criminal Appeals which was withdrawn since Appellant filed her brief. *Sanchez v. State*, No. PD-0961-07, 2010 WL 3894640 (Tex.Crim.App. Oct. 6, 2010). As this withdrawn decision was the sole support for this part of her argument, we will not address it.

### Standard of Review

In reviewing charge error, we must first determine whether error exists. *Druery v. State*,

225 S.W.3d 491, 504 (Tex.Crim.App. 2007). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id*. The standard of review differs depending on whether the defendant made a timely objection at trial. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004). If the error was the subject of a timely objection, reversal is required if there is some harm to the defendant as a result of the error. *See* TEX.CODE CRIM.PROC.ANN. art. 36.19 (West 2006); *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g). If no proper objection was made at trial, reversal is required only if the error is so egregious that the defendant was denied a fair and impartial trial. *See Ovalle*, 13 S.W.3d at 786; *Almanza*, 686 S.W.2d at 171.

### *Error in the Charge*

Consistent with the indictment, the charge permitted the jury to find Appellant guilty of murder if it found beyond a reasonable doubt that she, either acting alone or with David Lee Malone as a party to the offense:

1. intentionally or knowingly caused the death of George Earl Malone by kicking and striking George Earl Malone in the head;

2. intentionally, with intent to cause serious bodily injury to George Earl Malone, committed an act clearly dangerous to human life, namely kicking and striking George Earl Malone in the head, which caused the death of George Earl Malone; or

3. intentionally, with intent to cause serious bodily injury to George Earl Malone, committed an act clearly dangerous to human life, by manner and means unknown to the Grand Jury, which caused the death of George Earl Malone.[4]

The trial court is required to provide the jury with a written charge setting forth the law

---

[4] Paragraph Three of the indictment alleged as follows: "[A]nd it is further presented in and to said Court that the said DEBORAH MALONE WILSON, Defendant, in the County of Hood and State aforesaid, on or about the 28th day of September, 2009, did then and there intentionally, with intent to cause serious bodily injury to George Earl Malone, commit an act clearly dangerous to human life, by manner and means unknown to the Grand Jury, which caused the death of George Earl Malone."

applicable to the case. TEX.CODE CRIM. PROC.Ann. art. 36.14. The court's instructions must "apply the law to the facts adduced at trial." *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex.Crim.App. 2012). As a general rule, the instructions must also conform to allegations in the indictment. *Id.*

The term "manner and means" refers to the actus reus of the crime. *Id., citing Jefferson v. State,* 189 S.W.3d 305, 316 (Tex.Crim.App. 2006)(Cochran, J., concurring)(noting that manner and means is a "description of how the offense was committed."). The means of death may refer to the weapon or instrument responsible for the deceased's death. *Sanchez*, 376 S.W.3d at 773. Neither the manner nor the means need to be agreed upon unanimously by a jury. *Id*. at 773-74. The jury is only required to unanimously agree that the defendant caused the death of the complainant. *Id.* at 774.

Dr. Shiping Bao testified that the medical cause of death was the subdural hematoma, or blood clot, between the brain and skull. He determined that the cause of death was blunt force head injuries and the manner of death was homicide. Dr. Bao found at least five blunt force impacts to the victim's head but it was his opinion that the blow to the right orbit caused the left occipital lobe hemorrhage. Dr. Bao explained that the blow to the right orbit would cause the brain to move inside of the skull and strike the opposite side of the skull thereby causing the injury to the left occipital lobe. There is evidence in the record that David Malone kicked George in the head and also punched his head while Appellant was restraining George. The record does not contain any evidence that the victim's brain injury and resulting death was caused by unknown manner and means. Thus, the trial court erred by submitting the third alternative to the jury. *See Sanchez*, 376 S.W.3d at 774.

*Harm Analysis*

Appellant failed to object to the inclusion of this third alternative theory in the application paragraph. Consequently, the jury charge error requires reversal only if the error caused egregious harm. Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *See Almanza*, 686 S.W.2d at 172. The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Sanchez*, 376 S.W.3d at 774-75. In a jury charge alleging alternative theories, harm must be measured "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge." *Sanchez*, 376 S.W.3d at 775, *quoting Atkinson v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App. 1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex.Crim.App. 2002). When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted. *Sanchez*, 376 S.W.3d at 775. The presence of overwhelming evidence of guilt plays a determinative role in resolving the issue and may be considered when assessing jury-charge error. *Id.*

Having considered the entire record, we find that the erroneous jury charge did not result in egregious harm. The jury charge permitted the jury to convict Appellant either acting alone or as a party with David Malone under two other theories both of which are supported by the evidence. Issue Seven is overruled.

## LAW OF PARTIES

In Issue Eight, Appellant complains that the trial court erred by instructing the jury on the

law of parties because it was not raised by the evidence.[5]  A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both.  TEX.PENAL CODE ANN. § 7.01(a).  A person is criminally responsible as a party to an offense committed by the conduct of another if the person acts with an intent to promote or assist in the commission of the offense, and solicits, encourages, directs, aids, or attempts to aid another person to commit the offense.  TEX.PENAL CODE ANN. § 7.02(a)(2).  In determining whether a defendant is a party to an offense, the court may examine the events occurring before, during, or after the offense is committed and may rely on the defendant's actions showing an understanding and common design to commit the offense. *See Marable v. State*, 85 S.W.3d 287, 293 (Tex.Crim.App. 2002). An instruction on the law of parties may be given whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties.  *Ladd v. State*, 3 S.W.3d 547, 564 (Tex.Crim.App. 1999).

The trial court's charge instructed the jury that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  *See* TEX.PENAL CODE ANN. § 7.02(a)(2). The charge also instructed the jury that mere presence at the scene of an offense will not make a person a party to an offense.  Applying the law of parties to the offense of murder under Section 19.02(b)(1) and to the evidence as it relates to Paragraph 1 of Count I, Appellant is criminally responsible as a party to this offense if, acting with the intent to promote or assist in the commission of the murder of George Malone by David Lee Malone, Appellant solicited, encouraged, directed,

---

[5]  Appellant has not raised an issue on appeal that the evidence is legally insufficient to support her conviction.  We have not interpreted Issue Eight as raising such an argument because the only relief she seeks is reversal of her conviction and remand for a new trial.

- 18 -

aided, or attempted to aid David Malone to commit the murder, and David Lee Malone, intentionally or knowingly caused George Malone's death by kicking and striking him in the head. Similarly, Appellant is criminally responsible as a party to the offense of murder alleged in Paragraph 2 of Count I, if Appellant, acting with the intent to promote or assist in the commission of the murder of George Malone by David Lee Malone, Appellant solicited, encouraged, directed, aided, or attempted to aid David Malone to commit the murder, and David Lee Malone, acting with intent to cause serious bodily injury, committed an act clearly dangerous to human life by kicking and striking George Malone in the head which caused the death of George Malone.

It is undisputed that Appellant had a difficult relationship with her father during the weeks and months leading up to the offense. During the summer of 2009, George sought a protective order against Appellant and David. Just a few weeks before the offense, Appellant spoke with her brother, Yates Malone, about her ongoing dispute with George and she said that her father needed to die. Witnesses observed Appellant holding George during the assault while David viciously kicked him in the head and punched his head. Appellant continued to hold George even after his body went limp and David kicked him a second time in the head. Appellant did not merely hold George while David kicked him; she also bit George and gouged him with her fingernails. After neighbors intervened, Appellant repeatedly stated that she had beaten her father and she hoped he died. All of this evidence showed that Appellant acted with intent to promote or assist the commission of the offense and she aided or attempted to aid David Malone in the commission of murder as alleged in Paragraphs 1 and 2 of Count I. The trial court did not err by applying the law of parties to either paragraph. Issue Eight is overruled. Having overruled each issue, we affirm the judgment of the trial court.

February 6, 2013                           _____
                                           ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)