

# NUMBER 13-18-00392-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GUSTAVO TIJERINA SANDOVAL, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Justice West**

Appellant, Gustavo Tijerina Sandoval, was found guilty by a jury of capital murder and attempted capital murder. *See* TEX. PENAL CODE ANN. §§ 15.01(a), 19.03(a)(2). Appellant was sentenced to the death penalty for the capital murder and life imprisonment for the attempted capital murder. This appeal relates solely to appellant's conviction for

attempted capital murder.[1] Appellant raises fourteen points of error, which we reorder for clarity. Finding no reversible error, we affirm.

## I.  SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant argues that there is insufficient evidence to support his conviction.

## A.  Background

Appellant was charged, in a two-count indictment, with (1) capital murder of Javier Vega Jr. ("Junior") and (2) attempted capital murder of Javier Vega Sr. ("Senior"). On August 3, 2014, Junior (an off-duty border patrol agent) and his family decided to go fishing. Junior drove with his wife, Paola Brown; their two children, Jarod and Jiovanni; and Jiovanni's friend, Aric Garcia. Senior and Marie Vega, Junior's mother, drove in a separate vehicle.

Evidence adduced at trial generally established the following. On route to the family's fishing spot, Senior and Marie noticed two men in a red SUV parked on the side of the road. The red SUV followed the cars driven by the Vega family and stopped about thirty yards from where the family set up to fish. The SUV stayed for a few seconds then drove away. The SUV returned about ten to twenty minutes later, two men jumped out, yelled at the Vega family, and began shooting at them. Witnesses testified that appellant shot Junior, and both appellant and his codefendant, Ismael Hernandez Vallejo, shot toward Senior. Junior and Senior returned fire, causing appellant and Vallejo to flee.

---

[1] Sandoval's capital murder conviction was automatically appealed to the Texas Court of Criminal Appeals, and the Court affirmed his conviction and sentence. *See Sandoval v. State*, 665 S.W.3d 496, 506 (Tex. Crim. App. 2022); *see also* TEX. CODE CRIM. PRO. ANN. art. 37.071(h) (providing that a defendant's "judgment of conviction and sentence of death" are automatically reviewed by the CCA).

2

Senior sustained a gunshot wound to his gluteal region, and Junior sustained a fatal gunshot wound to the chest.

Appellant and Vallejo were later found hiding together in a garage from law enforcement, and the two were arrested around 2:00 a.m. the next morning. That same day, appellant was interviewed twice by Texas Rangers Donato Vela and Patrick O'Connor at the Willacy County Sheriff's Office. Transcripts of the interviews were admitted into evidence. In the interviews, appellant claimed that (1) he drove a red suburban to go fishing; (2) two people shot at him and Vallejo when they arrived at the fishing location; (3) he "fired back," and was "guilty"; (4) he and Vallejo fled shortly thereafter; (5) and he dropped a .45 caliber gun used in the shootout "in the brush" as they fled. Appellant also admitted that he and Vallejo planned to rob the Vega family to pay a debt:

| Ranger Vela: | [W]hen you arrived . . . . Were you and [Vallejo] together? |
| --- | --- |
| Appellant: | (Nods in affirmative) Yes, we were in agreement; we were both in agreement. |
| Ranger Vela: | In agreement for what? |
| Appellant: | To go there; to go there. |
| Ranger Vela: | To-o-o. . . |
| Appellant: | To fish and all that. |
| | . . . . |
| Ranger Vela: | But, when you say: "Were in agreement[.]" You were in agreement to go and rob a person or you were going to shoot someone, or what? What was it that you were in agreement to? |
| Appellant: | To go there with them. Not to kill anybody or anything. |

3

| | |
|---|---|
| Ranger Vela: | Not to kill anybody? |
| Appellant: | No. |
| Ranger Vela: | Only to rob a person? |
| Appellant: | (moment of silence) Because they threatened me. |
| Ranger Vela: | Who threatened you, Gustavo? |
| Appellant: | One from . . . Weslaco; that if I didn't give them the truck, they were going to kill my father and my mother (unintelligible). |
| | . . . . |
| Ranger Vela: | You owed them some money? |
| Appellant: | (Nods in the affirmative) |

Appellant explained to the Rangers that he owed $3,500 to people who had threatened to kill his parents and his wife.

Lastly, the State introduced physical evidence linking appellant to the scene of the crime. Appellant's hands were swabbed for gunshot residue, and the test results came back positive, indicating he had recently fired a gun. A .45 caliber pistol was found near the scene of appellant's arrest, and four .45 caliber casings were found at the crime scene. The State's firearm expert testified a .45 caliber bullet fragment was recovered from Junior's body, though he could not confirm the bullet was fired from the recovered pistol.

## B.    Standard of Review & Applicable Law

In reviewing sufficiency of the evidence, we consider all the evidence presented in the light most favorable to the verdict to determine whether the trial court was justified in finding guilt beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)

(plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We defer to the jury's role as the factfinder, which includes "resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1).[2] A person commits capital murder if the person intentionally commits murder in the course of committing or attempting to commit robbery. *Id.* §§ 19.02(b)(1), 19.03(a)(2). A person commits an attempt of a criminal

---

[2] "Intentional" and "knowing" conduct are defined in the penal code as:

(a)     A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b)     A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(a), (b).

offense "if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a).[3] "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

## C.    Analysis

Appellant argues the evidence was legally insufficient to prove (1) he "formed a specific intent that he or another person cause [Senior]'s death," and (2) he "solicited, encouraged, directed, aided, or attempted to aid" Vallejo in causing the attempted capital murder of Senior. In other words, appellant argues that the evidence was insufficient to prove he intended to murder Senior and that he was a party to the offense.

"Intent to kill may be inferred from the use of a deadly weapon in a deadly manner." *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (citing *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986)); *see also Jaramillo v. State*, No. 13-08-00468-CR, 2010 WL 2638488, at *4 (Tex. App.—Corpus Christi–Edinburg June 29, 2010,

---

[3] As discussed in the next issue, the jury charge was erroneous. The charge contained instructions on the law of parties, but the application paragraph did not reference party liability. The Court of Criminal Appeals has held that "the inclusion of the law of parties in the abstract portion of the jury charge [i]s enough for the law of parties to be taken into account in a sufficiency review." *See Yzaguirre v. State*, 394 S.W.3d 526, 529 (Tex. Crim. App. 2013); *Adames v. State*, 353 S.W.3d 854, 861–62 (Tex. Crim. App. 2011) (holding that the court of appeals properly considered the law of parties in its sufficiency analysis because the law of parties, while not in the application paragraph, was contained in the abstract portion of the jury charge).

6

no pet.) (mem. op., not designated for publication). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

"To determine whether an individual is a party to an offense, the reviewing court may look to 'events before, during, and after the commission of the offense.'" *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Wygal v. State,* 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). "A court may also rely on circumstantial evidence to prove party status." *Id.* (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom*, 920 S.W.2d at 302; *Gomez v. State*, No. 13-99-189-CR, 2001 WL 34615481, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 26, 2001, pet. ref'd) (mem. op., not designated for publication).

Considering appellant claimed self-defense at trial, identity was conclusively established to the jury. The evidence is also uncontradicted that appellant and Vallejo were together, appellant was driving, they both had guns, they both fired their weapons, they left together, and they hid from law enforcement together. Senior testified that both men shot at him. Aric testified that he saw the driver shoot Junior, and then "when Junior went to the ground," the driver shot at Senior. Marie, Paola, Jarod, and Jiovanni did not see which of the men shot Senior but each testified that the men generally fired in the direction of the family after getting out of the vehicle. Appellant's statements to the Texas Rangers that he and his codefendant planned to commit robbery and his use of a deadly weapon support the jury's finding that appellant intended to kill Senior in the course of the robbery. *See Manrique v. State*, 994 S.W.2d 640, 642–43 (Tex. Crim. App. 1999)

7

(concluding that it was reasonable to infer that the appellant intended to murder "more than one unknown person" from the fact that the appellant and his companion "fired at least 26 shots" at "a house that contained more than four people"); *see also Jaramillo*, 2010 WL 2638488, at \*4–5 (holding that the evidence was sufficient to prove that appellant "acted knowingly with respect to the consequences of his actions" and to convict appellant of attempted capital murder).

The factfinder is the sole judge of witness credibility and resolving conflicts in testimony, and we may not disturb those determinations on appeal. *See Murray*, 457 S.W.3d at 448. From the evidence presented, the jury could have determined beyond a reasonable doubt that appellant intended to murder Senior in the course of attempting to commit robbery and that he "solicited, encouraged, directed, aided, or attempted to aid" Vallejo in the commission of the offense. *See Manrique*, 994 S.W.2d at 642–43; *see also Jaramillo*, 2010 WL 2638488, at \*4–5; *Gomez*, 2001 WL 34615481, at \*3–4 (holding that there was sufficient evidence that appellant was guilty as a party to the offense of attempted capital murder); *cf. Gross*, 380 S.W.3d at 188 (holding that the evidence was insufficient to prove that appellant was a party to attempted murder because "the evidence did not demonstrate a prior or contemporaneous plan between" the appellant and codefendant).

Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which a rational trier of fact could find appellant guilty as a party to the offense of attempted capital murder beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 607–08; *Brooks*, 323 S.W.3d at 899. We overrule appellant's first issue.

8

## II.    JURY CHARGE

Appellant asserts several issues related to the jury charge. He alleges that the jury charge failed to include a necessary element of attempted capital murder and argues that such error deprived him of his "right to trial by jury" under the Sixth and Fourteenth Amendments of the United States Constitution (issue two) and Article I, §§ 10 and 15 of the Texas Constitution (issue three). He also argues that the alleged error violates Article 36.14 of the Texas Code of Criminal Procedure (issue four) and his right against double jeopardy (issue five).

### A.    Jury Charge Error

Appellant was indicted for capital murder of Junior (count one) and attempted capital murder of Senior (count two). As to count one, the indictment alleged that appellant

> did then and there intentionally cause the death of an individual, namely, **JAVIER VEGA, JR.**, by SHOOTING **JAVIER VEGA, JR.** WITH A DEADLY WEAPON, TO WIT: A FIREARM, and [appellant] was then and there in the course of committing or attempting to commit the offense of ROBBERY of **JAVIER VEGA, JR.** . . . .

(Emphasis added). As to count two, the indictment alleged that appellant

> did then and there, with the specific intent to commit the offense of CAPITAL MURDER of **JAVIER VEGA**, do an act, to-wit: BY SHOOTING **JAVIER VEGA** WITH A DEADLY WEAPON, TO WIT: A FIREARM, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended . . . .

(Emphasis added).

The abstract portion related to count two of the jury charge included an instruction for the law of parties.[4]  *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02. However, the application

---

[4] We note that an indictment need not allege the law of parties for the defendant to be charged as a party. *See Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) ("It is well-settled that the law of

9

paragraph thereafter failed to reference party liability. Further, upon comparison with the specific wording in the indictment, it is apparent the application paragraph for count two erroneously included the "Jr." suffix to the victim's name:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that . . . [appellant] did then and there, with the specific intent to commit the offense of Capital Murder of ***Javier Vega, Jr.***, do an act, to wit: by shooting ***JAVIER VEGA*** with a deadly weapon, to wit: a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of the offense of Attempted Capital Murder alleged in Count Two the indictment, and so say by your verdict.

(Emphasis added).[5]

## B.      Standard of Review & Applicable Law

Both parties agree that the jury charge contains error but disagree as to which standard of review applies to the charge error at issue. The State contends the error "is a garden variety charge-error claim that may only be resolved under *Almanza*'s egregious harm framework." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Appellant does not address the egregious harm standard in his brief. He

---

parties need not be pled in the indictment.") (collecting cases); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex. App.—Corpus Christi–Edinburg 1997, pet. ref'd).

[5] Neither party addressed the inclusion of the suffix as a typographical error. Instead, both parties analyzed the extent to which the application paragraph, as submitted, injected the law of transferred intent into the charge. *See* TEX. PENAL CODE ANN. § 6.04(b)(2) ("A person is . . . criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different person or property was injured, harmed, or otherwise affected."). The parties devote a large portion of their briefs to this analysis. For example, the State argues including "Jr." was not erroneous because it simply introduced transferred intent, and there was sufficient evidence at trial that appellant, while intending to shoot and kill Junior, also shot at Senior.

We decline to address the parties' arguments relating to transferred intent in the charge. We focus our analysis on the charge as it was intended by the trial court. Further, since we found sufficient evidence to support appellant's conviction as to the attempted capital murder of Senior, we need not analyze an alternative theory of conviction. *See Delgado v. State*, 635 S.W.3d 730, 741 (Tex. App.—Dallas 2021, pet. ref'd) ("When the trial court's charge authorizes the jury to convict on more than one theory, the guilty verdict will be upheld as long as the evidence is sufficient on any one of the theories." (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

contends the error "allowed the jury to return a guilty verdict on attempted capital murder without ever making a necessary finding that [he] had the requisite mental state for that offense"—i.e., that he intended to murder Senior. Appellant argues the error is unconstitutional, and entitles him to a reversal, despite adopting the charge at the trial court level.

"Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (cleaned up); *see Perez v. State*, 689 S.W.3d 369, 379 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). In a typical jury charge, "[a]bstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and indictment allegations.'" *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)).

"[A]ll alleged jury[ ]charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). But when, as here, no objection is made to the error in the jury charge, reversal is not required unless the error resulted in egregious harm. *See Alcoser*, 663 S.W.3d at 165. "Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (quoting *Almanza*, 686 S.W.2d at 171). "An erroneous jury charge is egregiously harmful if it affects

11

the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id.*

Appellant depicts the jury charge error as an unwaivable error that affects a "fundamental" constitutional right.[6] However, an unobjected-to jury charge error is subject to the egregious-harm standard, "even when the error is constitutional." *Sandoval v. State*, 665 S.W.3d 496, 549 n.206 (Tex. Crim. App. 2022); *Jimenez v. State*, 32 S.W.3d 233, 237–38 (Tex. Crim. App. 2000); *see also Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) ("When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury[ ]charge error unless the record shows 'egregious harm' to the defendant." (citations omitted)).[7]

## C.    Analysis

We proceed to analyze whether there is error, and if so, whether the harm was egregious. *See Alcoser*, 663 S.W.3d at 165.

### i.    Error

"In examining the charge for possible error, appellate courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" *Riley v.*

---

[6] Appellant relies on *Chapman v. California*, 386 U.S. 18, 24 (1967) for his argument that "[t]he State must prove federal constitutional error to be harmless beyond a reasonable doubt," and it "cannot meet that burden." *Chapman* is misplaced because appellant did not object to the jury charge error that he now complains about on appeal. *See Jimenez v. State*, 32 S.W.3d 233, 237–38 (Tex. Crim. App. 2000). An unobjected-to jury charge error is subject to the egregious-harm standard. *Id.*

[7] In analyzing sufficiency of jury charges, we note that it is important to remain consistent with Article 1.03 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.03 (stating that the code "is intended to embrace rules applicable to the prevention and prosecution of offenses against the laws of this State," to "adopt measures for preventing the commission of crime," and to "exclude the offender from all hope of escape").

*State*, 447 S.W.3d 918, 922 (Tex. App.—Texarkana 2014, no pet.) (quoting *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). The law of parties is contained in the abstract portion of the jury charge, while the same is not incorporated into the application paragraph. This constitutes charge error. *See Vasquez*, 389 S.W.3d at 368 (discussing generally that including the definition of law of parties in the abstract portion of the charge and failing to include any reference to the law of parties in the application paragraph is charge error). We also find it relevant that the State intended to charge appellant as a party in count two. According to the State's brief, "[t]he record is clear that the law of parties was the State's initial theory," and it leaned "heavily on that theory" "by its final closing argument." Finally, comparing the terminology in the application paragraph to that of the indictment, the inclusion of the "Jr." suffix in the application paragraph for count two was clearly a typographical error. We therefore find the typographical error in the application paragraph for count two likewise constitutes error in the jury charge. *See Andrews v. State*, 429 S.W.3d 849, 863–64 (Tex. App.—Texarkana 2014, pet. ref'd) (finding that "the differences in spelling and pronunciation between 'Box' and 'Boc'" of the victim's name in the jury charge, potentially referring to two different witnesses—"William Box and William Boc"—was error, but concluding that the appellant "did not suffer actual harm").

### ii.    Harm Analysis

Harm is assessed in light of the *Almanza* factors: (1) the entire jury charge; (2) state of the evidence; (3) argument of counsel; and (4) other relevant information revealed by the trial record. *See Alcoser*, 663 S.W.3d at 165 (designating these factors as the *Almanza* factors); *Almanza*, 686 S.W.2d at 171. We "examine the relevant portions of the

13

*entire* record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (citation omitted).

As previously stated, a hypothetically correct jury charge in this case would apply the law of parties to the capital murder statute, with robbery as the underlying felony. Thus, it would instruct the jury to find appellant guilty if they believed beyond a reasonable doubt that appellant (1) through his own conduct, or acting with the intent to promote or assist Vallejo in the robbery, or both, (2) solicited, encouraged, directed, aided, or attempted to aid Vallejo in committing robbery and the murder of Senior. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2), 19.02(b)(1), 19.03(a)(2).

The jury charge included, among other things, instructions regarding capital murder, the lesser-included offenses of murder and manslaughter, robbery and theft, criminal attempt, self-defense, the inadmissibility of involuntary statements, and definitions for intentional and reckless mental states. As already mentioned, the abstract paragraph for count two included instructions on the law of parties; however, the application paragraph made no reference to law the of parties.[8] *See Vasquez*, 389 S.W.3d at 368.

---

[8] Specifically, the abstract section of the jury charge stated:

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

Each party to an offense may be charged with the commission of the offense.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person.

14

Omitting the law of parties in the application paragraph typically would not be egregiously harmful because such an error benefits appellant. *See Garrett v. State*, 642 S.W.2d 779, 780 (Tex. Crim. App. 1982) (iterating that "[a] charge on the law of parties enlarges a defendant's criminal responsibility," and an instruction on such "benefits the State and not the defendant" (citing *Romo v. State*, 568 S.W.2d 298, 302, 303 (Tex. Crim. App. 1978) (op. on reh'g)); *see also Aguilar v. State*, No. 01-19-00133-CR, 2020 WL 1584444, at *4 (Tex. App.—Houston [1st Dist.] Apr. 2, 2020, no pet.) (mem. op., not designated for publication) ("[W]ith respect to the law of parties, the court of criminal appeals has held that, if a trial court 'fails to apply the law of parties to the facts of the case, it might be better trial strategy for the defense counsel not to ask for such a charge.'" (quoting *Romo*, 568 S.W.2d at 302)). Appellant did not object to the error, which may have inured to his benefit by increasing the burden on the State. *See Garrett*, 642 S.W.2d at 780; *see also Aguilar*, 2020 WL 1584444, at *4.

However, this was not the only error in the charge. The erroneous inclusion of "Jr." was notable because the victims had the same name. Thus, by including "Jr." in the application paragraph, the instructions identified Junior instead of his father, Senior. This error was compounded because the application paragraph for the lesser included offense of attempted murder contained the same error.

Nevertheless, whatever effect the charge error had on the jury is offset by the remaining *Almanza* factors. As to the state of the evidence, there was sufficient evidence of appellant's intent to murder Senior in the course of committing robbery and for the jury

---

Mere presence alone will not constitute one a party to an offense.

*See* TEX. PENAL CODE ANN. §§ 7.01(a), (b), 7.02(a)(2).

to find him guilty as a party to the offense of attempted capital murder beyond a reasonable doubt. The defense's theory at trial was that appellant acted in self-defense, and that his statements to law enforcement were involuntary. Appellant never argued that the State could not show the requisite scienter; rather, he presented a justification defense, the merits of which are not affected by the charge error herein complained of. Additionally, the jury clearly rejected these arguments. *See Braughton*, 569 S.W.3d at 611 ("[B]y its implicit rejection of appellant's defenses in finding him guilty, the jury necessarily signaled its disbelief in this testimony as lacking in credibility. . . ."). And, "implausible self-defense evidence makes it difficult to support an egregious-harm finding because a harm finding must be based on actual harm." *See Alcoser*, 663 S.W.3d at 170 (citation omitted). As to other relevant information, there was no evidence that the charge instructions confused the jury as to their ability to apply the law to the facts. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (finding that the fourth *Almanza* factor weighed against egregious harm because nothing in the record indicated the jury "express[ed] confusion as to the contradictory language" in the charge).

Appellant contends the charge allowed the jury to convict him of attempted capital murder without proving that he had the "specific intent to commit murder" against Senior. He argues that the jury charge violated his rights under the federal constitution, the Texas constitution, and Article 36.14 because the jury charge replaced his intent to murder Senior with the specific intent to murder Junior. However, even assuming the jury instructions omitted a necessary element of the offense, as explained, we must perform an egregious harm analysis. *See Sandoval*, 665 S.W.3d at 549 n.206; *Jimenez*, 32 S.W.3d at 237–38.

16

In this case, the charge error did not affect "the very basis of" appellant's case, did not "deprive[] [him] of a valuable right," and "did not vitally affect[] [his] defensive theory." *Alcoser*, 663 S.W.3d at 165. We conclude that appellant did not suffer egregious harm. *See id.*; *Manrique*, 994 S.W.2d at 642 ("As we have subsequently held, the evidence is not to be held insufficient because of a defect in the court's charge."); *Andrews*, 429 S.W.3d at 864. We overrule issues two through four.

## D.    Double Jeopardy

Appellant premises his fifth argument on the same jury charge error. He argues that the charge violated his right against double jeopardy because the State could not rely on his intent to kill Junior as an element in both charges. *See* TEX. PENAL CODE § 6.04(b)(2) ("A person is . . . criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different person or property was injured, harmed, or otherwise affected."). Essentially, he argues that because he was charged and convicted of the capital murder of Junior—which, he alleges, was one discrete act—his intent to kill Junior could not be duplicated and "transferred" to prove his intent to murder another individual. *See Roberts v. State*, 273 S.W.3d 322, 331 (Tex. Crim. App. 2008) ("[W]hile § 6.04 permits the use of transferred intent if a *different* person i[s] harmed; such use is not authorized if the intended victim is also killed, as that would permit one intent to kill to support more than one death.").

The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, protects a person from multiple punishments for the same offense. *See* U.S. CONST. amends. V, XIV; *Ex parte Benson*, 459 S.W.3d

67, 71 (Tex. Crim. App. 2015); *Price v. State*, 434 S.W.3d 601, 609 (Tex. Crim. App. 2014). A claim that a defendant was subjected to multiple punishments arises if a defendant "is punished for: (1) the same primary offense twice, 'once for the basic conduct, and a second time for that same conduct plus more,' or (2) the same criminal act twice under two distinct statutes 'when the legislature intended the conduct to be punished only once.'" *Price*, 434 S.W.3d at 609 (quoting *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)). Appellant's argument involves the latter.

However, appellant's double jeopardy argument fails because the shooting was more than one discrete act. *See Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012); *Manrique v. State*, 994 S.W.2d 640, 646 (Tex. Crim. App. 1999) ("Each round fired from the AK-47 assault rifle was a different and discrete act."). The evidence indicated that appellant fired a handgun multiple times at the Vega family, particularly as Junior and Senior fired back at him. Multiple shots, which occur very close in time, can still be "sufficiently separate to involve separate intents." *See Ex parte Norris*, 390 S.W.3d at 341; *Manrique*, 994 S.W.2d at 646. Even if we presume that the State relied on appellant's intent to kill Junior for both offenses, "it is certainly possible" that appellant intended "more than once" to kill Junior. *See Ex parte Norris*, 390 S.W.3d at 341; *Manrique*, 994 S.W.2d at 646.

Appellant fired multiple shots constituting multiple, discrete actions which demonstrated separate intents to murder. Thus, appellant was charged with two distinct offenses (capital murder and attempted capital murder) against two distinct victims (Junior and Senior). *See Ex Parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) ("The protection against double jeopardy does not apply to separate and distinct offenses that

18

occur during the same transaction. If a criminal act involves separate victims and distinct offenses—rather than multiple victims for a single offense—separate prosecutions are not barred." (citations omitted)). We hold that appellant was not subject to multiple punishments when he was charged and convicted of attempted capital murder of Senior. We overrule appellant's fifth issue.

### III. REMAINING POINTS OF ERROR

In his remaining points of error, appellant lodges a variety of constitutional and statutory complaints. He argues that:

- the trial court erred when it failed to suppress his recorded custodial statements to police because they were obtained in violation of his *Miranda* rights and Article 38.22 after he invoked his right to silence (issue six); the statements were coerced (issue seven); and he did not knowingly, intelligently, and voluntarily waive his rights prior to making his custodial statements (issue eight);

- the trial court failed to protect his right to counsel (issue nine) and his right to a fair and impartial tribunal (issue ten);

- the trial court erred when it held hearings on the qualifications, excuses, and exemptions for three venire panels outside the presence of him and his attorney (issue eleven);

- the trial court erred in refusing to grant a change of venue due to prejudicial publicity (issue twelve);

19

- the trial court erred when it denied his motion for mistrial after the State allegedly made improper comments on appellant's right to remain silent (issue thirteen); and

- the trial court violated the Confrontation Clause when it failed to exclude statements from appellant's interview with law enforcement (issue fourteen).

As appellant acknowledges in his brief, these points of error were raised before the Texas Court of Criminal Appeals as they related to the capital murder portion of the trial court's judgment. *See Sandoval*, 665 S.W.3d at 520–27 (addressing issues six through eight), 512–14 (addressing issues nine and ten), 509–12 (addressing issue eleven), 508–09 (addressing issue twelve), 549–50 (addressing issue thirteen), 530–31 (addressing issue fourteen). By and large, these points have been dismissed by the CCA. *See id.* at 521–23 (overruling issue six as to *Miranda*), 526–27 (overruling issue six as to Article 38.22), 523–24 (overruling issue seven), 525–26 (overruling issue eight), 512–13 (overruling issue nine), 513–14 (overruling issue ten), 511–12 (overruling issue eleven), 509 (overruling issue twelve), 550 (overruling issue thirteen), 531 (overruling issue fourteen).

The CCA analyzed these issues as to appellant's capital murder conviction; however, appellant fails to show or explain how the CCA's opinion is not also binding on the attempted capital murder portion of the judgment.[9] Upon review of issues six through fourteen, we conclude that we are bound by the CCA's ruling on these issues. *See, e.g.,*

---

[9] Appellant acknowledges that the CCA overruled points of error six through fourteen and that "the CCA's holding may bind this Court with respect to the attempted capital murder portion of the judgment." He notes that he "may seek federal review of" these issues and "therefore does not waive or withdraw" these issues to the extent they apply to his conviction for attempted capital murder.

*Villarreal v. State*, 504 S.W.3d 494, 509 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd) ("[A]s an intermediate appellate court, we must follow the binding precedent of the court of criminal appeals." (citations omitted)). Accordingly, we overrule appellant's remaining issues.

## IV.    CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
6th day of March, 2025.